**MOTORS INSURANCE CORPORATION,**
Plaintiff,

v.

Patrick Michael **BODIE**, Teresa
Bodie, Defendants.

No. S–90–1574–WBS/PAN.

United States District Court,
E.D. California.

Aug. 19, 1991.

Ronald L. Melluish, Rust, Armenis &
Schwartz, Sacramento, Cal., for plaintiff.

James M. O'Brien, Liebman, Reiner &
McNeil, Rancho Cordova, Cal., for defendants.

### MEMORANDUM AND ORDER

SHUBB, District Judge.

### I.  PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Motors Insurance Corporation ("Motors") filed the underlying action seeking a declaration of its rights and obligations to defendants Patrick Michael Bodie and Teresa Bodie under an automobile liability insurance policy for an automobile accident which occurred on September 10, 1988 in Calaveras County California. The parties have filed counter-motions for summary judgment which are now before the court. Jurisdiction is predicated on 28 U.S.C. § 1332.

The material facts are undisputed. On or about February 15, 1988, Patrick Bodie renewed his Motors automobile insurance policy, No. 135007760, for his 1984 Isuzu pickup truck. The policy provided liability coverage for bodily injury in the amount of $25,000/$50,000 and property damage coverage of $10,000. The policy also provided additional coverage for medical payments, comprehensive, collision and uninsured motorist protection. The total premium of $593.00 was paid in full. Motors issued the renewal policy and delivered it to Patrick Bodie at his then residence in Calaveras County, California.

During the summer of 1988, the Bodies wished to insure a 1976 Corvette. Teresa Bodie initially contacted Motors to obtain insurance but Motors declined to insure the Corvette. Teresa Bodie then contacted and obtained insurance coverage in her name from Financial Indemnity Company ("Fi-

**548**

nancial"). On or about August 18, 1988, Financial delivered the policy. The Financial policy listed both the Corvette and the Isuzu pickup truck as the insured vehicles. The policy provided liability coverage for bodily injury in the amount of $15,000/$30,000 and property damage coverage of $10,000. The total premium due was $1,823.48.

The Bodies allowed the Financial policy to lapse by not paying the premium payment which was due early September, 1988. On or about September 7, 1988, Financial mailed a "Notice of Cancellation" to Teresa Bodie which informed her that the policy would terminate on September 20, 1988 if the premium was not received. No payment was made. The Bodies did not inform Motors that they had purchased the Financial policy. Nor did they request a refund of "90% of the pro rata unearned premium" that an insured is entitled to in the event he or she cancels the policy, pursuant to the "Amendment of Policy Provisions—California." In addition, Motors has not offered to refund any of the premium.

On September 10, 1988, Patrick Bodie was involved in a serious automobile accident in his Isuzu pickup truck, striking another vehicle occupied by six people. This accident is the subject of a personal injury action now pending in the Superior Court for the County of Calaveras, Case No. 15870, which is set for trial on August 27, 1991. Plaintiffs in that action have made policy limits demands on both Financial and Motors.

Shortly after the accident the Bodies reported the accident to Motors. Motors took possession of the Isuzu pickup truck and settled the Bodies collision claim. When Motors finally learned of the Financial policy, it reserved its rights and later denied coverage altogether based on paragraph two of the "Automatic Termination" clause which provides:

> If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

Motors contends that when Patrick Bodie's pickup truck became insured under the Financial policy, the automatic termination clause operated to terminate the Motors policy. The Bodies disagree on numerous grounds.

Summary adjudication is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir.1984).

## II. DISCUSSION

### A. *Conflicts Analysis*

■ The court sitting in diversity applies the substantive law of the forum state including the choice of law rules. *See Ah Moo v. A.G. Becker Paribas, Inc.*, 857 F.2d 615, 620 (9th Cir.1988). California applies the law of the state with the most "significant relationship" with the facts and circumstances present in this case. *See Gamer v. DuPont Glore Forgan*, 65 Cal.App.3d 280, 287, 135 Cal.Rptr. 230 (1976). All factors point to California. Therefore the court finds that a California court would apply the substantive law of California.

The interpretation of the automatic termination provision at issue is a question of first impression in California. The court must therefore determine what the California Supreme Court would decide under the circumstances. *See, e.g., Insurance Co. of Pa. v. Associated Int'l Ins.*, 922 F.2d 516, 520–21 (9th Cir.1990).

### B. *Principles of Contract Interpretation*

■ The Motors' policy before the court is a classic "contract of adhesion." It is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Neal v. State Farm*

*Ins. Co.*, 188 Cal.App.2d 690, 694, 10 Cal. Rptr. 781 (1961).

> The rule that any ambiguities caused by the draftsman of the contract must be resolved against the party ... applies with peculiar force in the case of the contract of adhesion. Here the party of superior bargaining power not only prescribes the words of the instrument but the party who subscribes to it lacks the economic strength to change such language. Hence any ambiguity in the contract should be resolved against the draftsman, and questions of doubtful interpretation should be construed in favor of the subscribing party.

*Id.* at 695, 10 Cal.Rptr. 781. When a contract of insurance is involved, any ambiguity which "relates to extent or fact of coverage, ... will be understood in its most inclusive sense, for the benefit of the insured." *Continental Cas. Co. v. Phoenix Const. Co.*, 46 Cal.2d 423, 437, 296 P.2d 801 (1956).

> "The rule of construction against the insurer is especially applicable to exclusionary clauses. They must be plain, clear and conspicuous; if they fail to meet this test, they will be interpreted narrowly, and all ambiguities will be resolved against the insurer." 1 B. Witkin, *Summary of California Law* § 700 (1987) (citing *Silberg v. California Life Ins. Co.*, 11 Cal.3d 452, 464, 113 Cal.Rptr. 711, 521 P.2d 1103 (1974)). This rule of construction also applies to termination provisions:

> Termination provisions which purport to curtail the insurer's liability in a manner inconsistent with the insured's reasonable expectations are closely analogous to exclusionary provisions; in both cases the insurer attempts to carve out an area of non-coverage in a manner which does not clearly and adequately apprise the insured of the consequences. In interpreting such a termination provision, we believe that the principle of construction for exclusionary provisions are applicable.

*Paramount Properties Co. v. Transamerica Title Insurance Co.*, 1 Cal.3d 562, 569, 83 Cal.Rptr. 394, 463 P.2d 746 (1970).

### C. *Analysis*

■ With the foregoing principles in mind, the court must determine whether the automatic cancellation provision at issue cancelled the Motors policy. At the outset, the court finds that the provision is subject to the principle of construction applicable to exclusionary clauses because coverage may be denied under circumstances which could disappoint the reasonable expectations of the insured. Specifically, without actual intention on the part of the insured to terminate the policy, coverage may not be available even though the policy is paid in full and the policy term has not run. For the reasons discussed below, the court finds that the provision is not plain, clear and conspicuous, and therefore did not effect an automatic termination of the insurance policy.

### 1. The Termination Provision Was Not Conspicuous.

An exclusionary clause must be "positioned in a place and printed in a form which would attract a reader's attention." *Ponder v. Blue Cross of S. Cal.*, 145 Cal. App.3d 709, 719, 193 Cal.Rptr. 632. The provision at issue is the second paragraph of a two-part subsection denominated "Automatic Termination" of the "Termination" section which is included in "Part F—General Provisions." The first paragraph of the "Automatic Termination" section. provides for automatic termination at the end of the policy period if the insured does not accept an offer of renewal or pay the renewal premium when due. While neither party contends this provision to be applicable to this case, there is no clear demarcation to indicate that the second paragraph contains a separate and distinct provision for automatic termination. Specifically, the second paragraph is not separated from the previous paragraph by any subheading, lettering or numbering to distinguish it from the foregoing paragraph. Each and every exclusion in the policy, on the other hand, is lettered or numbered and separated from each other by an empty line.

### 2. The Termination Provision is Not Plain and Clear.

The provision only operates to terminate "similar insurance provided by this policy" in the event that "you [the insured] obtain other insurance on 'your covered auto.'" "Similar" is not defined by the policy and may be used in English to mean the "same" or "identical" though it is defined as "showing some resemblance; related in appearance or nature; alike though not identical." American Heritage Dictionary 1206 (1979).[1] It is difficult to imagine being called upon to interpret a more imprecise term. This inherent vagueness fully justifies the conclusion that the term "similar" is ambiguous. Under applicable rules of interpretation, therefore, the court cannot interpret "similar" to mean "showing some resemblance" for that would be to resolve the ambiguity in favor of the insurer.

The rules require the court to resolve the ambiguity in favor of the insured and interpret the provision "in its most inclusive sense, for the benefit of the insured." *Continental Cas. Co.*, 46 Cal.2d at 437, 296 P.2d 801. The Motors and Financial policies are not the same; they provide different limits for third party liability. This difference is likely to be the most important and significant difference in the eyes of the insured. In addition, the Motors policy lists Patrick Bodie as the named insured; the Financial policy lists Teresa Bodie as the named insured. Because of these differences, the court cannot conclude that the Motors policy is enough like the Financial policy to be "similar" within the meaning of the Motors policy. *See Capuano v. Kemper Ins.*, 433 A.2d 949, 956 (R.I.1981) (because each policy listed a different named insured and provided different levels of coverage, "one cannot reasonably be considered a substitute for the other").

### 3. Out-of-State Authority Not Persuasive.

Motors urges the court to follow *Taxter v. Safeco Ins. Co.*, 44 Wash.App. 121, 721

P.2d 972 (1986), *rev. denied*, 108 Wash.2d 1037 (1987). In *Taxter*, the Taxters owned an automobile insurance policy with Safeco that was set to expire on November 25, 1983, though they were given a grace period until December 25, 1983 to renew. *Id.* 721 P.2d at 973. During that time, the Taxters informed Safeco that they were shopping with other insurers and on December 2, the Taxters obtained a policy from Rainier. *Id.* On December 13, Mr. Taxter was involved in an automobile accident. The next day, Mrs. Taxter informed Safeco of the accident and Safeco, "unaware of the Rainier policy, ... told Mrs. Taxter to pay the premium on the Safeco policy to prevent it from lapsing...." *Id.* Both policies had a $100,000 limit. *Id.* Based on the identical automatic termination provision, the court ruled that the Safeco policy terminated on purchase of the Rainier policy. *Id.*

The *Taxter* court is distinguishable on at least two grounds. First, the policies in *Taxter* had identical coverage limits unlike the Motors and Financial policies. Further, the Taxters did not contend that the policies were not similar and thus the court was not call upon to interpret the term "similar."

Second, the *Taxter* court's ruling that the automatic termination provision was not ambiguous in light of the "other insurance" provision presents a different question from the one the court decides today, that is that "similar" is ambiguous. The "other insurance" provision in *Taxter* provided for pro rata sharing when other insurance applies as well. The insured argued that the "other insurance" provision would never apply because the automatic termination provision would terminate any other insurance. The *Taxter* court disagreed, noting that insurance policies of other individuals involved in the accident may apply thus triggering the other insurance provision. *Id.* 721 P.2d at 976. *But see, Travelers Indem. Co. v. Lucas*, 678 S.W.2d 732, 734 (Tex.Ct.App.1984) (similar auto-

---

**1.** The full usage note in the American Heritage Dictionary provides: *"Similar* is often misused in nontechnical contexts where *same* or *identical* would convey the sense actually intended."

matic termination provision contradicted and therefore ambiguous in light of "other insurance" provision.) Though the Motors policy also contains such a provision, the court need not decide or consider whether the termination provision is ambiguous when considered with the "other insurance" provision since the court has found the termination provision itself to be ambiguous because of the use of word "similar."

### III. CONCLUSION

Because the court finds that the termination provision cannot be interpreted as a cancellation of coverage, Motors' motion is denied. The Bodies are entitled to partial summary judgment on that issue. In response to the Bodies' request, the court reserves judgment on the issue of damages until resolution of the personal injury action now pending in the Superior Court for County of Calaveras.

IT IS THEREFORE ORDERED that Motors' motion for summary judgment be, and the same is, hereby denied;

IT IS FURTHER ORDERED that the Bodies' motion for partial summary judgment, be and the same is, hereby granted.