536 S.E.2d 689

SOUTH CAROLINA FARM BUREAU MUTUAL
INSURANCE COMPANY, Appellant,

v.

William H. COURTNEY, III and Unisun Insurance Company
of whom William H. Courtney, III, is Respondent.

No. 3228.

Court of Appeals of South Carolina.

Heard May 10, 2000.

Decided July 24, 2000.

Rehearing Denied Sept. 2, 2000.

272

M.M. Weinberg, III, and M.M. Weinberg, Jr., both of Weinberg, Brown & Curtis, of Sumter, for appellant.

William Ceth Land and John C. Land, III, both of Land, Parker & Reeves, of Manning, for respondent.

SHULER, Judge:

In this declaratory judgment action, the trial court found the automobile insurance policy on a replacement vehicle was not "similar" insurance sufficient to invoke the automatic termination clause in the replaced vehicle's policy. South Carolina Farm Bureau appeals. We affirm.

## FACTS/PROCEDURAL HISTORY

In the summer of 1997, William Courtney owned two automobiles, a 1997 Saturn and a 1995 Chevrolet Camaro. Farm Bureau insured both vehicles in separate policies. Each policy contained personal liability and underinsured motorist coverage (UIM) in limits of $100,000 per person and $300,000 per occurrence with property damage limits of $25,000 per accident (100/300/25).

In September 1997, the Camaro, driven by Courtney's wife Susan, was involved in an accident. Farm Bureau declared the car a total loss and tendered payment under the vehicle's collision coverage. Although the Camaro's insurance policy was set to expire at 12:01 a.m. on October 4, Farm Bureau never issued Courtney a notice of cancellation or refunded any unearned premiums. On October 4, using the proceeds from Farm Bureau's payout on the Camaro, Susan Courtney purchased a pick-up truck. She subsequently insured the truck with Unisun Insurance Co. on October 8, apparently without her husband's knowledge or consent. The Unisun policy provided personal liability limits of $15,000 per person and $30,000 per occurrence with property damage limits of $25,-

000. The policy provided for identical uninsured motorist coverage (UM) but afforded no UIM coverage.

On October 27, William Courtney, driving his Saturn, sustained serious injuries when another vehicle crossed the center line and struck him head-on. These injuries confined Courtney to a wheelchair for nine weeks and later required him to use a walker. The at-fault driver's insurer disbursed its minimum limits coverage for the accident, but Courtney's medical bills and other losses far exceeded the amount received. As a result, Farm Bureau paid Courtney the UIM limits from his policy on the Saturn but denied his attempt to stack UIM coverage from the Camaro's policy, claiming the Unisun policy obtained by Susan Courtney automatically terminated Farm Bureau's policy on the Camaro.

Farm Bureau brought this declaratory judgment action against Courtney and Unisun, seeking judicial determination of its obligation on the Camaro's policy. At Farm Bureau's request, the trial court dismissed Unisun as a party to the lawsuit. The court held a hearing and issued an order finding the Unisun policy on Susan Courtney's pick-up truck did not terminate the Farm Bureau policy on William Courtney's Camaro. This appeal followed.

## LAW/ANALYSIS

■■■ A declaratory judgment action is neither legal nor equitable, but is determined by the nature of the underlying issue. *Travelers Indem. Co. v. Auto World of Orangeburg, Inc.*, 334 S.C. 137, 511 S.E.2d 692 (Ct.App.1999). A suit to determine coverage under an automobile insurance policy, based in contract, is an action at law. *Id.* This Court's jurisdiction, therefore, is limited to correcting errors of law, and the trial court's factual findings will not be disturbed unless unsupported by any evidence. *Id.*

■■■ Farm Bureau contends Susan Courtney's purchase and insurance of the pick-up truck with Unisun relieved it of any obligation to indemnify William Courtney under the UIM provision of the Camaro's policy. The automatic termination clause in Farm Bureau's policy states in pertinent part:

If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

In refusing to find termination automatic under this clause, the trial court determined the phrase "any similar insurance," as employed in the Farm Bureau policy, was ambiguous. Construing the term in favor of Courtney, the named insured, the court found that the Farm Bureau and Unisun policies did not afford similar insurance because of the "vast difference" in coverage between the two. In particular, the trial court noted the Farm Bureau policy provided both liability and UIM coverage in amounts of 100/300/25 while the Unisun policy furnished only the minimum liability insurance required by law and no UIM coverage at all. Farm Bureau, on the other hand, claimed the two policies "share sufficient characteristics in common" because they both provide first-person liability insurance and thus are substantially similar.

The meaning of "similar" insurance in the automatic termination clause in Farm Bureau's policy is a novel question in this state.[1] Initially, we agree with the trial court that the term "similar" is ambiguous. It is not defined in the policy itself and creates uncertainty as to its precise meaning.[2] In describing an identical automatic termination provision in *Motors Insurance Corp. v. Bodie*, the district court stated:

"Similar" is not defined by the policy and may be used in English to mean the "same" or "identical" though it is defined as "showing some resemblance; related in appearance or nature; alike though not identical." It is difficult to imagine being called upon to interpret a more imprecise term. This inherent vagueness fully justifies the conclusion that the term "similar" is ambiguous.

770 F.Supp. 547, 550 (E.D.Cal.1991) (citation and footnote omitted). Likewise, Black's Law Dictionary defines the term as:

---

1. Farm Bureau's assertion that *Camden Wholesale Grocery v. National Fire Ins. Co.*, 106 S.C. 467, 91 S.E. 732 (1917), and *Walker v. Queen Ins. Co.*, 136 S.C. 144, 134 S.E. 263 (1926), are analogous is without merit. In these fire insurance cases, the court upheld the denial of coverage based on automatic termination clauses. The clauses therein, however, expressly stated the policies would terminate if the insured procured *any other* contract of insurance, not "similar insurance."

2. *See Black's Law Dictionary* 79–80 (6th ed. 1990) (words are ambiguous when "their signification seems doubtful and uncertain to persons of competent skill and knowledge to understand them").

Nearly corresponding; resembling in many respects; somewhat alike; having a general likeness, although allowing for some degree of difference.... [S]imilar is generally interpreted to mean that one thing has a resemblance in many respects, nearly corresponds, is somewhat like, or has a general likeness to some other thing but is not identical in form and substance, although in some cases "similar" may mean identical or exactly alike. It is a word with different meanings depending on [the] context in which it is used.

*Black's Law Dictionary* 1383 (6th ed. 1990) (internal citations omitted).

On appeal, Farm Bureau argues that the word "similar" should not be construed as being synonymous with "identical" and contends that because both its policy and the Unisun policy contained first-party liability insurance, the policies are sufficiently similar to invoke its automatic termination clause.

■■ We agree with Farm Bureau that "similar" should not be construed as being synonymous with "identical." *See Diamond State Ins. Co. v. Homestead Indus.*, 318 S.C. 231, 456 S.E.2d 912 (1995) (noting this court must give policy language its plain, ordinary, and popular meaning). However, we reject Farm Bureau's argument that the two policies are sufficiently similar simply because they both provide first-party liability insurance. Doubtless, every automobile insurance policy is inherently alike in that respect. Rather, in order to determine whether the two are sufficiently alike to be deemed similar, the policies must be examined as a whole.

Because South Carolina has no case on point, we find it helpful to turn to courts of other jurisdictions. In the context of automatic termination clauses, at least three courts interpreting identical language have held policies differing in the amount of coverage provided are not "similar" insurance as contemplated by the parties.[3]

In *Employers Mutual Casualty Co. v. Martin*, 671 A.2d 798 (R.I.1996), the Martins purchased insurance through Employers in April 1989; the policy had liability limits of $300,000 per accident. In May 1989, Employers informed the Martins that

---

**3.** Additionally, in *Franklin v. Kimberly*, 1997 WL 379173 (Tenn.Ct.App. 1997), an unreported opinion, the Tennessee Court of Appeals found that the word "similar" was ambiguous and must be construed against the insurer. In so construing, the court held that insurance coverage in

due to their poor driving records, it was canceling the policy on July 10. At the end of May, the Martins applied for and received insurance coverage from the Metropolitan Property and Liability Insurance Company. The Metropolitan policy had limits of $100,000 per person and $300,000 per accident. From May 25 to July 10, the Martins were covered under both policies.

On July 9, Paul Martin was involved in an automobile accident with an uninsured driver that resulted in the death of his five-year old son, Paul, Jr. The Martins filed claims with both Employers and Metropolitan. Under the Metropolitan policy, the Martins' recovery was limited to $200,000; however, under Employers' policy, the Martins could recover up to $300,000.

In a declaratory judgment action, Employers asserted that its policy automatically terminated when the Martins purchased "similar" insurance from Metropolitan, and thus Employers was not liable under its policy. The Rhode Island Supreme Court disagreed. In holding the two policies were not sufficiently similar to effectuate an automatic cancellation, the court specifically found the "disparity in coverage" between the policies precluded any interpretation that they represented similar insurance as intended by the policy language. *Id.* at 801.

In *Motors Insurance Corp. v. Bodie,* Patrick Bodie obtained a policy from Motors on his pick-up truck with limits of 25/50/10. A few months later the Bodies sought to add a Corvette to the Motors' policy. Motors, however, refused to insure the Corvette. Teresa Bodie, Patrick's wife, then insured the Corvette in her own name with Financial Indemnity Co., along with the truck. The Financial policy had liability limits of 15/30/10. The Bodies did not inform Motors that Financial had issued a policy covering the truck.

Shortly thereafter, Patrick Bodie was involved in a serious accident when his truck struck a vehicle occupied by six other

two separate policies are similar only to the extent the policy amounts are similar. (We note that the Tennessee Rules of Appellate Procedure, unlike the analogous South Carolina rules, do not prohibit the use of unpublished opinions so long as a copy is provided to the judge and opposing counsel. *Compare* Rule 11, Tennessee Rules of Appellate Procedure *with* Rule 239, SCACR).

people. The Bodies immediately reported the accident to Motors, which settled the collision claim on the truck. Upon learning of the Financial policy, however, Motors denied coverage based on its policy's automatic termination clause.

The federal district court, applying California law to interpret the two allegedly "similar" insurance policies, ultimately determined the policies were "not the same" because each provided "different limits for third party liability." *Bodie*, 770 F.Supp. at 550. In so finding, the court declared that "[t]his difference [in coverage] is likely to be the most important and significant difference in the eyes of the insured." *Id.* The court, therefore, concluded the Financial policy did not effect an automatic termination of the Motors' insurance policy. *Id.*

Finally, the Iowa Supreme Court addressed this issue in *United Fire & Casualty Co. v. Victoria*, 576 N.W.2d 118 (Iowa 1998). In *United*, the Victorias were in the process of switching their insurance from United to State Farm. United, however, never refunded the premiums, and for five days, the Victorias were covered by both United and State Farm. During that time period, Victor and Mabel Victoria, along with their son Roger, collided head on with Timothy Hatting. Mabel was killed in the accident. After the accident, Victor and Roger filed claims with United. United denied coverage under its contract, asserting that its policy automatically terminated with the purchase of the State Farm policy because the coverages were "similar insurance" under its policy.

Like the policy at issue in our case, the United policy did not define the word "similar." The Iowa Supreme Court, noting *Bodie*, found the term to be ambiguous. The court then noted that the differences between the two policies were apparent. The State Farm policy had limits of $100,000 per person and $300,000 per accident whereas the United policy had limits of $250,000 and $500,000, respectively. Moreover, the State Farm policy also provided no-fault coverage and road-side services that the United policy did not, while the United policy included UIM coverage that the State Farm policy did not. Based on these differences, the Iowa Supreme Court determined that the State Farm policy was not "similar" so as to effectuate automatic termination of the United policy.

■ We are persuaded by these authorities that "similar" insurance as used in Farm Bureau's automatic termination clause cannot be held to mean simply sharing common characteristics, particularly in light of this state's policy of construing insurance policies in favor of coverage for the insured. *See Diamond*, 318 S.C. at 236, 456 S.E.2d at 915 (holding that ambiguities are construed against the insurer); *accord Bodie*, 770 F.Supp. at 550 ("Under applicable rules of interpretation, therefore, the court cannot interpret 'similar' to mean 'showing some resemblance' for that would be to resolve the ambiguity in favor of the insurer."). Where, as here, a second, subsequent automobile insurance policy differs in both the amount of coverage and the kind of coverage provided, the policies will not be held to be "similar" insurance as contemplated in an automatic termination provision. Accordingly, the Unisun policy purchased by Susan Courtney did not cancel Farm Bureau's policy on the Camaro.[4]

**AFFIRMED.**

HEARN, C.J., and ANDERSON, J., concur.

---

4. Because we affirm the trial court on this ground, we need not reach Farm Bureau's other issues.