563 S.E.2d 648

SOUTH CAROLINA FARM BUREAU MUTUAL
INSURANCE COMPANY, Petitioner,

v.

William H. COURTNEY, III, and Unisun
Insurance Company, Defendants,

Of whom William H. Courtney is Respondent.

No. 25464.

Supreme Court of South Carolina.

Heard March 20, 2002.

Decided May 6, 2002.

Rehearing Denied May 29, 2002.

M.M. Weinberg, III, and M.M. Weinberg, Jr., both of Weinberg, Brown & Curtis, of Sumter, for petitioner.

William Ceth Land and John C. Land, III, both of Land, Parker & Welch, P.A., of Manning, for respondent.

## ON WRIT OF CERTIORARI TO THE
## COURT OF APPEALS.

Justice MOORE:

We granted a writ of certiorari in this case to review the Court of Appeals's decision[1] construing an automatic termination clause in an automobile insurance policy. We affirm in result.

## FACTS

In 1997, respondent Courtney (Husband) owned two cars, a Chevrolet Camaro and Saturn, both insured with petitioner (Insurer). Both policies had underinsured motorist coverage (UIM).[2]

In September 1997, Husband's wife, Susan Courtney (Wife), was in an accident in the Camaro and the vehicle was a total loss. Insurer paid for the vehicle under Husband's collision coverage. On October 4, 1997, Wife purchased a Chevrolet pickup truck as a replacement vehicle and insured it with Unisun Insurance Company. The Unisun policy had no UIM coverage.

On October 27, 1997, Husband was in an accident in the Saturn and was seriously injured. He filed a claim with Insurer attempting to stack the UIM coverage from the two policies issued by Insurer covering the Camaro and the Saturn.

Insurer brought this declaratory judgment action to determine whether the UIM coverage on both policies could be stacked or whether only the Saturn UIM coverage applied.

---

**1.** *South Carolina Farm Bureau Mut. Ins. Co. v. Courtney,* 342 S.C. 271, 536 S.E.2d 689 (Ct.App.2000).

**2.** UIM coverage was: $100,000 bodily injury per person; $300,000 bodily injury per accident; and $25,000 property damage per accident.

Although the Camaro policy was not actually cancelled for non-payment of premiums until January 23, 1998, Insurer claimed it terminated on October 4, 1997, when Wife insured the replacement vehicle with Unisun. Insurer relied on an automatic termination clause in the policy which provides:

> If you obtain other insurance on your covered auto,[3] any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

The trial court found the Camaro policy was not terminated for three reasons: 1) Wife had no authority to terminate the Camaro policy by buying insurance for the replacement vehicle without Husband's consent; 2) the automatic termination clause was not triggered because the insurance purchased for the replacement vehicle did not qualify as "similar insurance;" and 3) termination under the automatic termination clause did not comport with S.C.Code Ann. § 38–77–120(b)(2) (2002) which requires an overt act of the insured's intent to cancel the policy.

The Court of Appeals affirmed on the ground the insurance purchased on the replacement vehicle was not "similar insurance" and so the automatic termination clause was not triggered. It declined to address the alternative rulings of the trial court although Insurer appealed these rulings as well.

## ISSUE

Is an automatic termination clause valid under South Carolina law?

## DISCUSSION

The Court of Appeals affirmed the trial court's finding that the Unisun policy purchased by Wife did not qualify as "similar insurance" because the Unisun policy did not include UIM coverage and it had different liability limits than the policy with Insurer.

While we agree with the Court of Appeals's construction of the policy, we find an automatic termination clause allowing unilateral cancellation by an insurer is invalid under

---

3. Under the policy, "covered auto" includes a replacement vehicle.

our statutory scheme.[4]  Section 38–77–120(b)(2), which was cited by the trial court in support of its decision, provides:

> § 38–77–120.  **Requirements for notice of cancellation of or refusal to renew policy.**
>
> (a) No cancellation or refusal to renew by an insurer of a policy of automobile insurance is effective unless the insurer delivers or mails to the named insured at the address shown in the policy a written notice of the cancellation or refusal to renew.
>
> . . . .
>
> (b) Subsection (a) of this section does not apply if the:
>
> . . . .
>
> (2) named insured has demonstrated by some overt action to the insurer or its agent that he expressly intends that the policy be canceled or that it not be renewed.

■  Here, as found by the trial court, Insurer gave no notice of cancellation as required under subsection (a) to validate its cancellation based on the automatic termination clause.  Further, there is no evidence Husband communicated to Insurer that he intended the Camaro policy be cancelled to trigger the exception to notice provided in subsection (b).  The fact that a new insurance policy was obtained on the replacement vehicle does not in itself qualify as an overt act showing an insured's intent to cancel.  *See Tyner v. Cherokee Ins. Co.,* 262 S.C. 462, 205 S.E.2d 380 (1974) (the mere procuring of a policy of insurance with the intent that it should be substituted for an existing policy does not effect a cancellation of the existing policy unless such substitution is accepted by both the

---

4.  As noted by the Court of Appeals, the term "similar insurance" is not precisely defined in the policy; further, any ambiguity in an insurance policy must be construed liberally in favor of the insured.  *Diamond State Ins. Co. v. Homestead Indus.,* 318 S.C. 231, 456 S.E.2d 912 (1995). Construing the automatic termination clause in favor of the insured in this case, the Unisun policy does not qualify as similar insurance because it does not include the type of coverage (UIM) Husband is claiming under his policy with Insurer.  This dissimilarity is enough in itself even without considering the different liability limits of the two policies.  Other courts have reached the same conclusion based on different types of coverage and liability limits when construing automatic termination clauses referring to "similar insurance."  *See, e.g., United Fire & Cas. Co. v. Victoria,* 576 N.W.2d 118 (Iowa 1998); *Employers Mut. Cas. Co. v. Martin,* 671 A.2d 798 (R.I.1996).

insured and the insurer); *see generally T.B. Ector v. American Liberty Ins. Co.*, 138 Ga.App. 519, 226 S.E.2d 788 (1976) (noting that vast majority of jurisdictions reject the so-called "substitution rule" and hold the mere procurement of additional insurance without notice of intent to cancel by the insured is not sufficient). Cancellation based solely on an automatic termination clause without notice to the insured violates § 38–77–120.

Moreover, even if notice were given, S.C.Code Ann. § 38–77–123 (2002) limits unilateral cancellation by an insurer. This section provides as follows in subsection (B):

(B) No insurer shall cancel a policy except for one or more of the following reasons:

(1) The named insured or any other operator who either resides in the same household or customarily operates a motor vehicle insured under the policy has had his driver's license suspended or revoked during the policy period or, if the policy is a renewal, during its policy period or the ninety days immediately preceding the last anniversary of the effective date.

(2) The named insured fails to pay the premium for the policy or any installment of the premium, whether payable to the insurer or its agent either, directly or indirectly under any premium finance plan or extension of credit.

This section does not authorize unilateral cancellation by an insurer for any other reason.

■ Automobile insurance is a highly regulated area of the law. It is well-settled that an insurer has the right to impose only those conditions that do not conflict with a statutory mandate. *Jordan v. Aetna Cas. & Sur. Co.*, 264 S.C. 294, 214 S.E.2d 818 (1975); *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Parker*, 282 S.C. 546, 320 S.E.2d 458 (Ct.App.1984). Since the legislature has limited an insurer's unilateral right to cancel to two reasons—license suspension or revocation or an insured's failure to pay—an automatic termination clause for obtaining "similar insurance" is invalid.[5]

---

5. We note there is no public policy reason to construe § 38–77–123(B) less restrictively since an insurer may prevent any windfall to the insured by including a pro rata "other insurance" clause in its policy. The policy in this case in fact includes such a clause, providing "if

In conclusion, we agree with the Court of Appeals's construction of the automatic termination clause but conclude such a clause is not valid in any event.[6]

**AFFIRMED IN RESULT.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

policies issued by other insurers apply, we are liable only for our share."

**6.** As noted in the Court of Appeals's decision and Insurer's brief, we have recognized the validity of similar automatic termination clauses in the context of fire insurance. *See Walker v. Queen Ins. Co.*, 136 S.C. 144, 134 S.E. 263 (1926); *Camden Wholesale Grocery v. National Fire Ins. Co.*, 106 S.C. 467, 91 S.E. 732 (1917). Until 1986, however, there was no statutory limitation on an insurer's right to unilateral cancellation of fire insurance and therefore these cases did not consider the validity of such clauses in the face of such a limitation. *See* S.C.Code Ann. § 38–75–730 (2002) (enacted by 1986 S.C. Act No. 338).