781 S.E.2d 137

AUTO–OWNERS INSURANCE COMPANY, Appellant,

v.

Elouise Woody BENJAMIN, Melvin Benjamin, Joshua Lee
Cail, Naida L. Singleton, and Pee Dee Heating and
Cooling Specialists, Defendants,

Of whom Elouise Woody Benjamin and Melvin
Benjamin are the Respondents.

Appellate Case No. 2013–001321.
No. 5367.

Court of Appeals of South Carolina.

Heard Nov. 4, 2014.
Decided Dec. 9, 2015.

138

Dominic Allen Starr and Alan Grant Jones, both of McAngus, Goudelock, & Courie, of Myrtle Beach, for appellant.

Robert Norris Hill, of the Law Office of Robert Hill, of Lexington, and William P. Hatfield, of Hatfield Temple, LLP, of Florence, for respondents.

McDONALD, J.

In this declaratory judgment action, Auto–Owners Insurance Company (Auto–Owners) appeals the circuit court's grant

of summary judgment in favor of Respondents Elouise and Melvin Benjamin (collectively, the Benjamins). Auto–Owners argues the circuit court erred in determining that a commercial general liability policy (CGL Policy) issued to Pee Dee Heating and Cooling Specialists, Inc. (Pee Dee) provided additional coverage for injuries sustained by Elouise Benjamin in an automobile accident involving a Pee Dee employee. We affirm.

### FACTS/PROCEDURAL BACKGROUND

Naida Singleton and Brett Singleton own and operate Pee Dee, which is located in Chesterfield County. On February 14, 2008, Auto–Owners issued Pee Dee an automobile insurance policy (Auto Policy). The Auto Policy provided $300,000 in coverage for combined liability, uninsured, and underinsured protection on five scheduled drivers and six scheduled vehicles, as well as comprehensive coverage, collision, and "road trouble service."

On February 15, 2008, Auto–Owners issued Pee Dee a CGL Policy providing $2,000,000 in commercial general liability coverage and an endorsement providing $1,000,000 in liability coverage for "hired auto" and "non-owned auto." The policy provisions forming the basis of the inquiry in this case are contained in three portions of the CGL Policy: (1) the commercial general liability Aircraft, Auto or Watercraft Exclusion (the Exclusion); (2) the commercial general liability Other Insurance Condition (the Condition); and (3) the commercial general liability Endorsement (the Endorsement).

Pursuant to the Exclusion, found in **Section I—COVERAGES, Coverage A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Exclusion g. Aircraft, Auto or Watercraft,** no coverage exists for the following:

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury"

or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.

The Condition, found in **Section IV—COMMERCIAL GENERAL LIABILITY CONDITIONS,** provides in pertinent part:

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverage **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, or contingent or on any other basis:

. . . .

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I**—Coverage **A**—Bodily Injury and Property Damage Liability.

. . . .

We will share the remaining loss, if any, with any other insurance that is not described in the Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Finally, the Endorsement modifies the insurance provided by the CGL **"COVERAGE PART."** Pursuant to the second section of the Endorsement, titled **"HIRED AUTO AND NON–OWNED AUTO LIABILITY,"** the CGL Policy states the following:

Coverage for "bodily injury" and "property damage" liability under **SECTION I—COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** is extended as follows under this item, but only if you do not have any other insurance available to you which affords the same or similar coverage.

**Coverage**

We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of an "auto":

a. You do not own;

b. Which is not registered in your name; or

c. Which is not leased or rented to you for more than ninety consecutive days and which is used in your business.

**Exclusions**

With respect only to **HIRED AUTO AND NON–OWNED AUTO LIABILITY,** the exclusions which apply to **SECTION I—COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** other than the Nuclear Energy Liability Exclusion Endorsement, do not apply ...

Although the CGL Policy generally excluded automobile accidents under the Exclusion, Pee Dee purchased the Endorsement, which, in limited circumstances, provided liability coverage under the CGL Policy for "bodily injury" and "property damage" arising out of an automobile accident. However, the CGL Policy contained a clause stating the Endorsement only applied "if you do not have any other insurance available to you which affords the same or similar coverage." April 1, 2008 was the effective date for both the CGL Policy and its Endorsement as well as the Auto Policy.

On April 7, 2008, a Pee Dee employee, Joshua Lee Cail, was involved in an automobile accident with Elouise Benjamin. At the time of the accident, Cail was driving a 2004 Toyota Tacoma pickup truck owned by Naida Singleton, used by Pee Dee for business purposes, and insured by the Auto–Owners Auto Policy. Elouise Benjamin's medical expenses exceed $500,000.

On May 15, 2008, the Benjamins filed suit against Naida Singleton, Cail, and Pee Dee for injuries and damages resulting from the automobile accident. Auto–Owners filed a declaratory judgment action on December 19, 2008, seeking a declaration that the Auto Policy did not provide coverage for Cail because, at the time of the accident, he was not a permissive driver as required by the Auto Policy. The circuit court disagreed, determining that Cail was a permissive driver under the Auto Policy at the time of the accident.[1]

On June 14, 2011, Auto–Owners and the Benjamins entered into a settlement agreement providing that Auto–Owners would pay the Benjamins the Auto Policy limits of $300,000. In turn, the Benjamins released Cail and Auto–Owners under the Auto Policy and signed a covenant not to execute against Singleton and Pee Dee. The settlement agreement further provided that Auto–Owners reserved the right to seek a declaratory judgment to determine whether the CGL Policy provided coverage for the automobile accident. The Benjamins agreed that if the circuit court determined the CGL Policy provided coverage for their claims, the total recovery available would be the aggregate amount of $300,000 from the Auto Policy and the applicable limits of the CGL Policy.

Auto–Owners filed the current declaratory judgment action on July 8, 2011. Both Auto–Owners and the Benjamins filed cross motions for summary judgment as to whether the CGL Policy provided coverage for the Benjamins' claims. Following a January 28, 2013 hearing, the circuit court granted the Benjamins' motion for summary judgment and denied Auto–Owners' cross-motion by order filed March 22, 2013. On June 3, 2013, the circuit court denied Auto–Owners' motion to alter or amend.

### ISSUE ON APPEAL

Did the circuit court err in finding Pee Dee's CGL Policy provided coverage in addition to that provided by the Auto Policy?

### STANDARD OF REVIEW

"An appellate court reviews the granting of summary judgment under the same standard applied by the trial court under

---

1. This order was not appealed.

Rule 56(c), SCRCP." *Bovain v. Canal Ins.*, 383 S.C. 100, 105, 678 S.E.2d 422, 424 (2009). The circuit court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Quail Hill, LLC v. Cty. of Richland*, 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010) (quoting *Pye v. Estate of Fox*, 369 S.C. 555, 563, 633 S.E.2d 505, 509 (2006)). "Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts." *Id.* (quoting *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 378, 534 S.E.2d 688, 692 (2000)).

**LAW/ANALYSIS**

Auto–Owners contends the circuit court erred in granting the Benjamins' motion for summary judgment, arguing that the CGL Policy's Endorsement provides no coverage for the automobile accident due to the "same or similar coverage" provided by the Auto Policy. We disagree.

"Insurance policies are subject to the general rules of contract construction." *Whitlock v. Stewart Title Guar. Co.*, 399 S.C. 610, 614, 732 S.E.2d 626, 628 (2012) (quoting *M & M Corp. of S.C. v. Auto–Owners Ins. Co.*, 390 S.C. 255, 259, 701 S.E.2d 33, 35 (2010)). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Id.* (quoting *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009)). "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning." *Id.* (quoting *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008)).

"Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *Whitlock*, 399 S.C. at 615, 732 S.E.2d at 628 (quoting *McGill*, 381 S.C. at 185, 672 S.E.2d at 574). Whether

the language of a contract is ambiguous is a question of law for the court. *Id.* "An insurance contract is read as a whole document so that 'one may not, by pointing out a single sentence or clause, create an ambiguity.'" *Beaufort Cty. Sch. Dist. v. United Nat'l Ins. Co.*, 392 S.C. 506, 516, 709 S.E.2d 85, 90 (Ct.App.2011) (quoting *Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976)). However, this court must construe "[a]mbiguous or conflicting terms in an insurance policy ... liberally in favor of the insured and strictly against the insurer." *Whitlock*, 399 S.C. at 615, 732 S.E.2d at 628 (quoting *Clegg*, 377 S.C. at 655, 661 S.E.2d at 797). "Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability." *Owners Ins. Co. v. Clayton*, 364 S.C. 555, 560, 614 S.E.2d 611, 614 (2005).

In *Beaufort County School District*, this court explained the differences between a patent ambiguity and a latent ambiguity:

A patent ambiguity is one that arises upon the words of a will, deed, or contract. A latent ambiguity exists when there is no defect arising on the face of the instrument, but arising when attempting to apply the words of the instrument to the object or subject described. Interpretation of an unambiguous policy, or a policy with a patent ambiguity, is for the court. Interpretation of a policy with a latent ambiguity is for the jury.

392 S.C. at 526, 709 S.E.2d at 95–96 (citations omitted).

Here, the Benjamins' "bodily injury" and "property damage" arose out of the maintenance or use of an "auto" owned by Naida Singleton, driven by Cail, and insured under Auto–Owners' Auto Policy. Pee Dee is the named insured on the Auto Policy as well as the CGL Policy and its Endorsement. Although Cail was not listed as a scheduled driver on the Auto Policy, the circuit court found that he was a permissive user and was therefore covered under the Auto Policy.

█ Our review of the record reveals Pee Dee satisfied the requirements for CGL coverage as listed in the Endorsement. Specifically, Pee Dee did not own the 2004 Toyota Tacoma pickup truck involved in the accident; the truck was not

registered in Pee Dee's name; the truck was not leased or rented to Pee Dee for more than ninety consecutive days; the truck was used in Pee Dee's business; and the truck was one of the six automobiles described in the Declarations Section of the Auto Policy. Despite the fact that the truck was covered by Auto–Owners' Auto Policy, we agree with the circuit court that the Endorsement also provided coverage.

According to Auto–Owners, "[t]he Endorsement is neither supplemental nor excess coverage to the Auto Policy.... [I]t provides coverage to Pee Dee for a different set of facts." We disagree. The exclusions applicable to **SECTION I— COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** of the CGL Policy— with the exception of one, which is not applicable here—do not apply to Pee Dee's CGL Policy because Pee Dee pur- chased the Endorsement. Consideration of the Condition, found in **SECTION IV–COMMERCIAL GENERAL LIA- BILITY CONDITIONS,** demonstrates that the CGL Policy and its Endorsement are in fact supplemental or excess coverage to the Auto Policy because "the loss [arose] out of the maintenance or use of" the 2004 Toyota Tacoma, which is "not subject to Exclusion **g.** of Section I—Coverage A—Bodily Injury and Property Damage Liability." Thus, we find the circuit court properly concluded that Auto–Owners' "CGL Policy provides coverage for the accident at issue through its Endorsement" and did not err in granting the Benjamins' motion for summary judgment on the additional coverage argument.

## A. The Term "Same"

Auto–Owners argues "the inclusion of the term 'same' precludes the court from interpreting [similar] to mean 'the same' or 'identical.'" However, Auto–Owners did not address the term "same" in its motion for summary judgment, its reply to Respondents' response in opposition, or its motion to alter or amend. Additionally, the circuit court did not address the interpretation of the term "same" in its order granting the Benjamins' motion for summary judgment or its order deny- ing Auto–Owners' motion alter or amend. *See Staubes v. City of Folly Beach,* 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("It is well-settled that an issue cannot be raised for the first

time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review."). Moreover, Auto–Owners' argument regarding the term "same" is limited to one sentence and fails to cite to any authority. *See* Rule 208(b)(1)(D), SCACR (requiring discussion of the appellant's legal arguments and citations to authorities); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting that when a party fails to cite authority or when the argument is simply a conclusory statement, the party is deemed to have abandoned the issue on appeal). Therefore, we find this argument is not preserved for appellate review.

### B. "Similar Coverage" Provision

Auto–Owners argues the circuit court erred in finding the "similar coverage" provision of the Endorsement was ambiguous and in relying on *South Carolina Farm Bureau Mutual Insurance Company v. Courtney*, 342 S.C. 271, 536 S.E.2d 689 (Ct.App.2000), *aff'd on other grounds*, 349 S.C. 366, 563 S.E.2d 648 (2002) (holding an automatic termination clause allowing unilateral cancellation by insurer when the insured obtains similar coverage on a covered automobile is invalid). We disagree.

In *Courtney*, a husband and wife owned a Saturn and a Chevrolet Camaro, which were insured by Farm Bureau under separate policies. 342 S.C. at 273, 536 S.E.2d at 690. Both policies included underinsured motorist coverage (UIM) in limits of $100,000 per person and $300,000 per occurrence, with property damage limits of $25,000 per accident (100/300/25). *Id.* In September 1997, wife was involved in an accident, and the Camaro was subsequently declared a total loss. *Id.* Farm Bureau tendered payment under the vehicle's collision coverage. *Id.* Although the policy on the Camaro was set to expire on October 4, 1997, Farm Bureau neither issued husband a notice of cancellation nor refunded any unearned premiums. *Id.* Using the proceeds from the policy on the Camaro, wife purchased a pick-up truck, which she insured with Unisun on October 8, 1997, without husband's knowledge or consent. *Id.* The Unisun policy provided personal liability limits of $15,000 per person and $30,000 per occurrence, with property damage limits of $25,000. *Id.* Although the Unisun

policy provided identical uninsured motorist coverage, it did not provide any UIM coverage. *Id.* at 274, 536 S.E.2d at 690.

On October 27, 1997, husband was seriously injured in an accident while driving the Saturn. *Id.* Husband's medical bills and other losses exceeded the amount received from the at-fault driver's insurer. *Id.* Farm Bureau paid husband the UIM limits from the Saturn's policy "but denied his attempt to stack UIM coverage from the Camaro's policy, claiming the Unisun policy obtained by [wife] automatically terminated Farm Bureau's policy on the Camaro." *Id.* Farm Bureau brought a declaratory judgment action, seeking a determination as to its obligation under the Camaro's policy. *Id.* The circuit court found that the Unisun policy on the pick-up truck was not "similar" insurance sufficient to invoke the automatic termination clause in the Farm Bureau policy on the Camaro. *Id.* at 275, 536 S.E.2d at 691. This court affirmed, concluding that because the Unisun policy differed "in both the amount of coverage and the kind of coverage provided, the policies will not be held to be 'similar' insurance." *Id.* at 279, 536 S.E.2d at 693. Our supreme court agreed with this construction of the automatic termination clause, but went a step further, concluding "such a clause is not valid in any event." *Courtney,* 349 S.C. at 372, 563 S.E.2d at 651.

Here, the circuit court found the "similar coverage" provision of the Endorsement to be ambiguous, and thus was required to construe the provision liberally in favor of the Benjamins and strictly against Auto–Owners. *See, e.g., Whitlock,* 399 S.C. at 615, 732 S.E.2d at 628 (explaining that appellate courts must construe "[a]mbiguous or conflicting terms in an insurance policy ... liberally in favor of the insured and strictly against the insurer" (quoting *Clegg,* 377 S.C. at 655, 661 S.E.2d at 797)); *Clayton,* 364 S.C. at 560, 614 S.E.2d at 614 (clarifying that insurance policy exclusions are construed "most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability"). The circuit court was not persuaded by Auto–Owners' argument that "the *Courtney* decisions are inapplicable here" and instead "[found] them instructive." [2]

---

2. The circuit court explained: "The court of appeals' discussion [in *Courtney* ] as to the ambiguity of the term 'similar' focused on the

Several jurisdictions have concluded that the term "similar" is inherently vague in a number of contexts. *See, e.g., McCuen v. Am. Cas. Co. of Reading, Pa.*, 946 F.2d 1401, 1408 (8th Cir.1991) (explaining the term "similar" is "so elastic, so lacking in concrete content," that it imports "substantial ambiguities" into an officer and director's liability policy); *Am. Family Mut. Ins. Co. v. Ragsdale*, 213 S.W.3d 51, 56 (Mo.Ct. App.2006) (concluding the clause "other similar insurance" is ambiguous because it could mean the underinsured coverage is excess over any other applicable coverage or it could mean the underinsured coverage is excess over any other underinsured motorist coverage); *Knowlton v. Nationwide Mut. Ins. Co.*, 108 Ohio App.3d 419, 670 N.E.2d 1071, 1074 (1996) (finding that " 'similar coverage' given its ordinary and usual meaning, is reasonably susceptible of more than one interpretation and is therefore ambiguous. By its very definition 'similar' is a broad term and would permit [insurer] to deny uninsured coverage to any 'other person' who has applicable coverage under some sort of insurance policy, not just uninsured motorist coverage."); *Caldwell v. Transp. Ins. Co.*, 234 Va. 639, 364 S.E.2d 1, 2–3 (1988) (holding a policy exclusion of loss of property "while below ground surface in mining, tunneling, or *similar operation* " was insufficiently precise to exclude coverage of loss of equipment during drilling of well) ((emphasis added)).

Conversely, other jurisdictions have concluded that the term "similar" is not ambiguous. *See, e.g., Cal. Dairies Inc. v. RSUI Indem. Co.*, 617 F.Supp.2d 1023, 1037–38 (E.D.Cal.2009) (noting that if the court were to define the term "similar" as the "same" or "identical," that definition would defeat the exclusionary provision's purpose of avoiding the moral hazard of employers insuring against labor law violations); *Gangi v. Sears, Roebuck & Co.*, 33 Conn.Supp. 81, 360 A.2d 907, 908 (1976) (explaining that the word "similar" as ordinarily used means "general likeness although allowing for some degree of difference"); *Newman v. Raleigh Internal Med. Assocs., P.A.*, 88 N.C.App. 95, 362 S.E.2d 623, 626 (1987) (finding that

ambiguous nature of the term itself rather than its unique context within automatic termination clauses, stating, 'It is difficult to imagine being called upon to interpret a more imprecise term.' *Id.* at 275, 536 S.E.2d at 691."

"similar" is a commonly used word, with an easily ascertainable definition in an employment contract dispute).

In this case, the Endorsement clause provides coverage under the CGL Policy for "bodily injury" and "property damage" arising out of an automobile accident in limited circumstances, "but only if you do not have any other insurance available to you which affords the same or similar coverage." Because the term "similar" is not defined in the CGL Policy or its Endorsement, it must be defined according to the usual understanding of the ordinary person. *See Beaufort Cty. Sch. Dist.,* 392 S.C. at 518, 709 S.E.2d at 91 (stating policy language must be given its "plain, ordinary, and popular meaning").

The term "similar" means "having likeness or resemblance especially in a general way." *Random House College Dictionary* 1226 (rev. ed.1980). The term "similar" is also defined as:

Nearly corresponding; resembling in many respects; somewhat alike; having a general likeness, although allowing for some degree of difference.... [S]imilar is generally interpreted to mean that one thing has a resemblance in many respects, nearly corresponds, is somewhat like, or has a general likeness to some other thing but is not identical in form and substance, although in some cases "similar" may mean identical or exactly alike. It is a word with different meanings depending on [the] context in which it is used.

*Similar,* BLACK'S LAW DICTIONARY (6th ed.1990).

That the term "similar" is not defined in the Endorsement creates ambiguity as to its precise meaning.[3] We find *Courtney,* as well as case law from other jurisdictions, supports our conclusion that "similar" is ambiguous as used in the policy because it is neither defined by the policy nor is the definition easily ascertainable. As the drafter of the CGL Policy and Endorsement, Auto–Owners could have easily defined the phrase "similar coverage" to include the Auto Policy. Likewise, Auto–Owners could have excluded coverage in the event

---

3. *See Courtney,* 342 S.C. at 275 n. 2, 536 S.E.2d at 691 n. 2 (stating "words are ambiguous when 'their signification seems doubtful and uncertain to persons of competent skill and knowledge to understand them' " (quoting *Similar,* BLACK'S LAW DICTIONARY) (6th ed.1990)).

of "any other insurance policy." Moreover, Auto–Owners could have drafted the Endorsement so that the "similar coverage" exclusion applied to a different insurance policy with different coverage sold by Auto–Owners to the same policy holder. Because the burden rests with the insurer to clearly enumerate the terms in its policy—and ambiguous terms are to be construed strictly against the insurer—we find the circuit court properly construed the Endorsement in favor of coverage. *See Diamond State Ins. Co. v. Homestead Indus., Inc.,* 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995) (holding that ambiguities are strictly construed against the insurer).

### C. Interpretation of "Similar" within the Context of the Policy

Auto–Owners further contends that the circuit court erroneously interpreted the term "similar" without properly considering the context in which it was used in the policy. We disagree.

In its order, the circuit court concluded that the *Courtney* court's focus was "term-centric" and that the word "similar" was as ambiguous in the Endorsement as it was in the *Courtney* policy. Like the circuit court, we recognize "the 'vast difference' in coverage between the two policies," and we agree that the coverage provided by the two policies is not "similar."

Auto–Owners contends the Auto Policy and Endorsement have "characteristics in common" and are "alike although not identical." Both policies provide coverage for "bodily injury" and "property damage" liability from the maintenance or use of an automobile, coverage to Pee Dee and any permissive user, and protection from personal liability arising out of an auto accident. However, our review of the policies as a whole reveals a number of differences between the Auto Policy and the CGL Policy's Endorsement:

| | **Auto Policy** | **CGL Policy Endorsement** |
|---|---|---|
| Issued | February 14, 2008 | February 15, 2008 |
| Effective | April 1, 2008 | April 1, 2008 |
| Limits | $300,000 | $1,000,000 |
| Coverage | Liability, UM, UIM, collision, and "road trouble service" | Liability in limited circumstances |

| Scheduled Drivers | 5 total | None |
|---|---|---|
| Scheduled Vehicles | 6 automobiles including the 2004 Toyota Tacoma | None |
| Application | 5 scheduled drivers as well as any permissive drivers and the 6 scheduled automobiles as described in the Declarations | Automobile must be used in your business and must be one which you do not own; is not registered in your name; and is not leased or rented to you for more than 90 consecutive days |

In the context of the Endorsement providing coverage for "bodily injury" and "property damage" liability under the CGL Policy, "but only if you do not have any other insurance available to you which affords the same or similar coverage[,]" the term "similar" modifies "coverage." The circuit court concluded that "[d]ue to the $700,000 difference in coverage between the two policies ... the coverage provided by the two policies is not 'similar.' " *See Motors Ins. Corp. v. Bodie,* 770 F.Supp. 547, 550 (E.D.Cal.1991) (holding the motors policy is not enough like the financial policies to be found similar, "they provide different limits for third party liability ... likely to be the most important and significant difference in the eyes of the insured"); *Emp'rs Mut. Cas. Co. v. Martin,* 671 A.2d 798, 801 (R.I.1996) (finding the disparity in coverage between the policies precluded any interpretation that they represented similar insurance as intended by the policy language).

Here, the Endorsement coverage differs from that of the Auto Policy in not only the amount of coverage, but also the type of coverage provided, as well as its application. Therefore, the policies do not afford "similar coverage" as contemplated in the Endorsement. Accordingly, we find the circuit court properly granted the Benjamins' motion for summary judgment.

**CONCLUSION**

For the foregoing reasons, we hold the circuit court properly determined that Pee Dee's CGL Policy provided coverage in addition to that disbursed under the Auto Policy. Accordingly, the ruling of the circuit court is

**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.