**UNITED FIRE & CASUALTY CO., Appellant,**

v.

**Mabel VICTORIA, Roger Victoria, Victor Victoria, State Farm Mutual Insurance Company and Timothy John Hatting, Appellees.**

**No. 96–1451.**

Supreme Court of Iowa.

April 22, 1998.

Joseph Fitzgibbons and Ned A. Stockdale of Fitzgibbons Brothers, Estherville, for appellant.

James R. Christoph and Scott Dunn, Boulder, CO, William Kevin Stoos of Klass, Stoos, Stoik, Mugan, Villone & Phillips, L.L.P., Sioux City, for appellees Mabel Victoria, Roger Victoria, Victor Victoria, and State Farm Mutual Insurance Company.

Patricia L. Vogel of TePaske, Rens, Rensink & Pluim, Orange City, for appellee Timothy John Hatting.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

United Fire & Casualty Co. filed this declaratory judgment action to determine the extent of coverage provided by its policy in which Mabel Victoria was the named insured. United contends that an automatic termination clause in the policy relieves it from any liability because the Victorias had purchased "similar" insurance from another company. In the alternative, United argues that a "family exclusion" in the policy relieves it from any liability to family members who were injured while occupying the insured car. The district court ruled against United on both issues. We affirm on the "similar" insurance termination issue, but reverse on the court's order for "novation" of the policy to eliminate the family member exclusion.

While Mabel and her husband were residents of Goldfield, Iowa, Mabel purchased this policy from United. The policy period was October 29, 1993, to April 29, 1994. On January 4, 1994, the Victorias moved to Longmont, Colorado. On February 1, 1994, Mabel wrote to her United agent in Goldfield and told him of their new address. She informed him that one of the couple's cars should be deleted from the policy because it had been transferred to their son. She inquired about receiving a refund for that vehicle. In addition, Mabel wrote "[t]he Colorado branch of [United] no longer writes

personal lines. Therefore, in April we will be changing car insurance companies."

On April 25, 1994, Mabel applied for coverage with State Farm Mutual Automobile Insurance Company through a Colorado agent. State Farm bound insurance coverage as of that day. The United policy was not set to expire until April 29, 1994, so for five days the Victorias were ostensibly covered by both the United and State Farm policies. During this period, on April 28, 1994, Mabel, Victor, and their son Roger, who was driving, collided head-on with a car driven by Timothy Hatting. Hatting was injured, as well as Victor and Roger. Mabel was killed.

After the accident, Victor and Roger Victoria filed claims with United. United and State Farm initially treated the claims as being subject to proration because of the apparent existence of coverage under both of the policies. The driver of the second car, Timothy Hatting, made a claim against the Victorias, and United and State Farm began the process of negotiating with Hatting's insurance company with a view toward prorating his claims as well. United now claims that it has no coverage under its policy.

## I. *The Automatic Termination Clause.*

■ United first argues that it has no coverage because the policy was automatically terminated when the Victorias became insured by State Farm. United relies on this clause in its policy:

> If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

United argues that, while the policies are different in some respects, they are nevertheless "similar" for purposes of the automatic termination clause. They say this is so because the policies cover the same vehicle and provide the same general type of coverage even though there were differences in the policies, such as the limits of liability.

The Victorias respond that (1) this automatic termination clause violates Iowa Code section 515D.4 (1993), which provides the "permitted" grounds for cancellation of a pol-

icy; (2) the automatic termination provision is so ambiguous and confusing that it is unenforceable; (3) United is estopped from enforcing it; (4) there was no proof of the insured's intention to cancel the United policy by buying a replacement policy; and (5) the United and State Farm policies were not "similar." Because we resolve the issue on the fifth argument, the lack of similarity of the policies, we do not address the remaining arguments raised by the Victorias.

The United policy does not define "similar." United argues that policies with different limits of liability are nevertheless "similar" for purposes of this clause if they provide the same general type of coverage. Here, United's policy provided liability coverage of $250,000 per person and $500,000 per accident, while State Farm's limits were $100,000 and $300,000, respectively. United argues that an insured can obtain lower limits of liability under a second policy and still have "similar" coverage.

It might well be the understanding of an insurance professional that these policies are similar. However, to an average policy buyer, a policy with substantially lower limits would not likely be viewed as "similar." When the consequences of buying a similar policy are so serious as to cause an automatic termination, an insured should be informed as to what constitutes "similar" coverage. We have said that, "[w]hen interpreting ambiguous words in insurance contracts, the language should be interpreted from the viewpoint of an ordinary person, not a specialist or expert." *Steinbach v. Continental W. Ins. Co.*, 237 N.W.2d 780, 782 (Iowa 1976).

> As one court concluded in a similar case, "[s]imilar" is not defined by the policy and may be used in English to mean the "same" or "identical" though it is defined as "showing some resemblance; related in appearance or nature; alike though not identical." American Heritage Dictionary 1206 (1979). It is difficult to imagine being called upon to interpret a more imprecise term. This inherent vagueness fully justifies the conclusion that the term "similar" is ambiguous....

> The rules require the court to resolve the ambiguity in favor of the insured and

interpret the provision "in its most inclusive sense, for the benefit of the insured." *Continental Cas. Co. [v. Phoenix Const. Co.]*, 46 Cal.2d [423,] 438, 296 P.2d 801, [810 (1956)]. The [two policies] are not the same; they provide different limits for third party liability. This difference is likely to be the most important and significant difference in the eyes of the insured. *Motors Ins. Corp. v. Bodie*, 770 F.Supp. 547, 550 (E.D.Cal.1991) (footnote omitted) (applying California law) (policy providing bodily injury coverage of $25,000/$50,000 and property damage coverage of $10,000 not "similar" to policy providing bodily injury coverage of $15,000/$30,000 and property damage coverage of $10,000); *accord Employers Mut. Cas. Co. v. Martin*, 671 A.2d 798, 801 (R.I.1996) ($300,000 liability coverage under one policy and $200,000 under another; policies not similar under automatic termination provision).

■ This court applies an objective test to determine the existence of an ambiguity. The question is whether a genuine uncertainty exists as to which of two or more possible meanings is the proper one. *FDIC v. American Cas. Co.*, 528 N.W.2d 605, 608 (Iowa 1995). When an insurance policy is reasonably susceptible to two different interpretations, it will be construed in favor of the insured.

The differences in the policies are apparent. In addition to the disparate limits of liability, the State Farm policy provides "no fault" coverage and emergency road services, while the United policy does not. The United Fire policy includes underinsured motorist coverage, which the State Farm policy apparently does not.

The coverage purchased under the State Farm policy is not "similar" for purposes of the automatic termination clause, and we therefore affirm on that issue.

## II. *The Family Exclusion Provision.*

The United policy provided:

We do not provide Liability Coverage for any person for "bodily injury" to you or any "family member."

"Family member" is defined as:

A person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

Roger Victoria, who was the son of the insured, was the driver of the Victoria car. His father, Victor, was injured, and Mabel, his mother, was killed. If the family exclusion is enforceable, all family members would be precluded from recovery under the family exclusion.

We have upheld a similar family exclusion in an automobile liability policy, *Walker v. American Family Mut. Ins. Co.*, 340 N.W.2d 599, 601–03 (Iowa 1983), and under a homeowners policy, *Principal Cas. Ins. Co. v. Blair*, 500 N.W.2d 67, 69 (Iowa 1993).

■ The Victorias contend that, because Mabel and Victor were residents of Colorado at the time of the accident, any policy written by United must conform to Colorado law, which they say does not permit such exclusions. The district court agreed and ruled that United must "reform" the policy to delete the family exclusion.

■ We need not pass on two preliminary questions raised by United in connection with this issue: (1) the Victorias failed to request novation; and (2) an insured is not automatically entitled to a reformed policy when moving to another state. Instead, we decide the issue on the basis that the Victorias failed to prove that Colorado law would prohibit such an exclusion, although some of the witnesses suggested that might be so. The rule is that, when foreign law is not pled or proven, it is presumed to be the same as Iowa's. *Powell v. Khodari–Intergreen Co.*, 334 N.W.2d 127, 131 (Iowa 1983). Under Iowa law, as shown by the cases cited above, such an exclusion is valid.

We conclude that the court erred in ordering reformation or novation of the insurance policy to remove the family exclusion, and we therefore reverse on that issue.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**