# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2023 ND 84

| | |
|---|---|
| Nodak Insurance Company, | Plaintiff and Appellee |
| v. | |
| Farm Family Casualty Insurance Company, | Defendant and Appellant |
| and | |
| Mountain West Farm Bureau Mutual Insurance Company; Samuel Hamilton; Gordon Williams, individually and as parent and next friend of H.W., a minor; and Dawn Hustad and Kris Meduna, individually and as parents and next friends of A.M., a deceased minor, | Plaintiffs |

### No. 20220114

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Kirsten M. Sjue, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice. Justice Tufte filed a dissenting opinion.

Scott K. Porsborg (argued) and Austin T. Lafferty (appeared), Bismarck, ND, for plaintiff and appellee.

Klay C. Ahrens (argued) and Joseph M. Barnett (appeared), Edina, MN, for defendant and appellant.

**Bahr, Justice.**

[¶1] Farm Family Casualty Insurance Company ("Farm Family") appeals from a judgment after the district court granted summary judgment to Nodak Insurance Company ("Nodak") and denied, in part, summary judgment to Farm Family. We conclude the automobile policy Farm Family issued to its insureds had not "ceased" under the policy language and remained in effect at the time of the April 2019 motor vehicle accident. We affirm.

I

[¶2] This case arises out of an April 6, 2019 motor vehicle accident. The following facts relevant to this appeal are undisputed.

[¶3] Samuel Hamilton is the son of Bruce and Diana Hamilton. At the time of the April 2019 accident at issue, Samuel Hamilton was a resident of North Dakota, and his parents were residents of Montana. Before the accident, Farm Family issued an automobile insurance policy to Bruce and Diana Hamilton with an effective policy period of October 19, 2018 to April 19, 2019. The Farm Family policy was initially negotiated and issued to the Hamiltons in Vermont. The policy insured a 2011 pickup truck. The policy provided bodily injury liability coverage limits of $250,000 per person and $500,000 per accident.

[¶4] After moving to Montana, the Hamiltons obtained an insurance policy from Mountain West Farm Bureau Mutual Insurance Company ("Mountain West") that also insured the 2011 pickup truck. The Mountain West policy had a policy term that ran from December 2, 2018 to June 2, 2019 and provided bodily injury liability coverage limits of $100,000 per person and $300,000 per accident.

[¶5] In April 2019, Samuel Hamilton was driving the insured 2011 pickup truck in Williams County. Samuel Hamilton reportedly ran a stop sign while intoxicated and struck a vehicle driven by H.W., in which A.M. was a passenger. As a result of the accident, H.W. was seriously injured and A.M. was

killed. Nodak insured the vehicle H.W. and A M. occupied at the time of the accident.

[¶6] Nodak commenced this declaratory judgment action seeking a declaration Farm Family's automobile policy was in effect at the time of the April 2019 accident, Farm Family's policy cannot be retroactively cancelled, and the vehicle driven by the insureds' son was not an "underinsured motor vehicle" under North Dakota law. Farm Family answered and denied Nodak's claims. Farm Family asserted its policy effectively ceased or terminated on December 2, 2018 because its named insureds, Bruce and Diana Hamilton, obtained the insurance policy through Mountain West. Based on the policy language, Farm Family asserted its policy was not in effect at the time of the accident.

[¶7] Nodak moved the district court for summary judgment, and Farm Family made a cross-motion for summary judgment. After a hearing, the court entered an order granting Nodak's motion in part, concluding the Farm Family policy was in effect and provided coverage for the vehicle driven by the insureds' son, Samuel Hamilton, at the time of the accident.

[¶8] After further briefing and a hearing, the district court entered a second order on the summary judgment cross-motions. The court declared the 2011 pickup truck driven by the named insureds' son was not an "underinsured motor vehicle" and Farm Family and Mountain West must share pro rata in paying the loss. A final judgment was entered.

II

[¶9] Our standard for reviewing summary judgment is well established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a

2

matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Borsheim Builders Supply, Inc. v. Manger Ins., Inc.*, 2018 ND 218, ¶ 7, 917 N.W.2d 504 (quoting *Forsman v. Blues, Brews & Bar-B-Ques, Inc.*, 2017 ND 266, ¶ 9, 903 N.W.2d 524).

## III

[¶10] Farm Family argues the district court erred in determining the automobile policy it issued to its named insureds was in full force and effect and provided coverage on the 2011 pickup truck at the time of the April 2019 accident.

[¶11] "Insurance policy interpretation is a question of law, which is fully reviewable on appeal." *Dahms v. Nodak Mut. Ins. Co.*, 2018 ND 263, ¶ 8, 920 N.W.2d 293 (quoting *Borsheim*, 2018 ND 218, ¶ 8). "This Court independently examines and construes the insurance contract on appeal to decide whether coverage exists." *Id.* We construe policy language to give effect to the parties' mutual intention at the time of contracting:

We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. *If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage.* We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and

3

effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

*Dahms*, at ¶ 8 (quoting *Borsheim*, at ¶ 8) (emphasis added).

[¶12] Farm Family contends the material facts are undisputed and this case involves interpretation of its policy. The policy contains the following language:

10. **CANCELLATION OR NONRENEWAL OF THIS POLICY**

. . . .

If other insurance is obtained by **you** on **your insured car**, similar insurance afforded under this policy for that car will cease on the effective date of the other insurance.

If different requirements for cancellation and nonrenewal or termination of policies are applicable because of the laws of **your** state, **we** will comply with those requirements.

[¶13] Farm Family argues this policy language is clear and unambiguous and its policy effectively "ceased" on December 2, 2018, which is the date their named insureds obtained an alleged "similar" policy of insurance through Mountain West. Farm Family argues because its policy "ceased," it follows the policy was not in effect at the time of the April 2019 accident and cannot provide coverage on the vehicle the named insureds' son was operating at the time of the accident. Farm Family asserts the term "cease" is clear and unambiguous. Farm Family further contends the "termination by substitution" or "cancellation by substitution" doctrine is well-grounded in insurance law and dispositive.

[¶14] The preliminary issue on appeal is whether, in the context of the automatic termination clause at issue, the language "similar insurance" means the other insurance obtained by the insureds is similar only "in type" or similar "in type and in amount." We hold it is the latter. In construing automatic termination clauses, other courts have also held insurance policies differing in the amount of coverage provided are not considered "similar insurance." *See, e.g.*, *United Fire & Cas. Co. v. Victoria*, 576 N.W.2d 118, 120-21 (Iowa 1998); *Emps. Mut. Cas. Co. v. Martin*, 671 A.2d 798, 800 (R.I. 1996); *S.C. Farm*

4

*Bureau Mut. Ins. Co. v. Courtney*, 536 S.E.2d 689, 693 (S.C. Ct. App. 2000), *aff'd on different grounds*, 563 S.E.2d 648 (S.C. 2002); *Motors Ins. Corp. v. Bodie*, 770 F. Supp. 547, 550 (E.D. Cal. 1991).

[¶15] For example, in *Victoria*, 576 N.W.2d at 120-21, the court held policies with differing limits of liability were not "similar" under an automatic termination clause. In rejecting the insurer's argument policies with different limits were "similar," the court explained:

> It might well be the understanding of an insurance professional that these policies are similar. However, to an average policy buyer, a policy with substantially lower limits would not likely be viewed as "similar." When the consequences of buying a similar policy are so serious as to cause an automatic termination, an insured should be informed as to what constitutes "similar" coverage. We have said that, [w]hen interpreting ambiguous words in insurance contracts, the language should be interpreted from the viewpoint of an ordinary person, not a specialist or expert.

*Id.* at 120 (citation and quotation marks omitted). The court, determining an ambiguity existed, construed the policy in favor of the insured, stated the differences included the disparate liability limits, and concluded the policies at issue were not "similar" for purposes of the automatic termination clause. *Id.* at 121.

[¶16] In *Martin*, 671 A.2d at 801, the court held the disparity in coverage between two policies providing uninsured/underinsured-motorist coverage was sufficient to preclude the interpretation the two policies were similar insurance. In that case, one policy provided coverage in the amount of $300,000 per accident, while the other policy provided coverage in the amount of $100,000 per person with a $300,000 limit per accident, resulting in a difference in the total amount of damages recoverable. *Id.* Likewise, in *Courtney*, 536 S.E.2d at 693, the court held when a second, subsequent automobile insurance policy differs in both the amount of coverage and the kind of coverage provided, the policies will not be held to be "similar" under an automatic termination provision. *Id.*

5

[¶17] In *Bodie*, 770 F. Supp. at 550, a federal district court held as a matter of law the automatic termination provision was "not plain and clear":

> The provision only operates to terminate "similar insurance provided by this policy" in the event that "you [the insured] obtain other insurance on 'your covered auto.'" "Similar" is not defined by the policy and may be used in English to mean the "same" or "identical" though it is defined as "showing some resemblance; related in appearance or nature; alike though not identical." American Heritage Dictionary 1206 (1979).[1] It is difficult to imagine being called upon to interpret a more imprecise term. This inherent vagueness fully justifies the conclusion that the term "similar" is ambiguous. Under applicable rules of interpretation, therefore, the court cannot interpret "similar" to mean "showing some resemblance" for that would be to resolve the ambiguity in favor of the insurer.

*Id.* at 550 & n.1 (stating in footnote 1, "The full usage note in the American Heritage Dictionary provides: '*Similar* is often misused in nontechnical contexts where *same* or *identical* would convey the sense actually intended.'"). The court held the two insurance policies at issue, while providing for automobile insurance, were not "similar" as a matter of law because the policies contained different limits for third-party liability. *Id.* at 550-51. *See also Hodgdon v. Barr*, No. CV 940048077S, 1996 WL 798748, *2 (Conn. Super. Ct. Apr. 26, 1996) (concluding "the phrase 'similar insurance' contained in the automatic termination provision of the [automobile insurance] policy requires comparability both as to type and amount of liability coverage"); 1 *Auto. Liab. Ins. 4th* § 8:7 (October 2022 Update) ("The 'automatic termination' requirement of 'similar insurance' may not be met if the policy limits of the new policy are substantially less than the older policy limits, and where the term 'similar' is not defined in the policy, it has been held ambiguous and, therefore, inapplicable to subsequent acquired policies containing lower limits of coverage.").

[¶18] We find the above authorities instructive. When coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. We also regard the insurance policy as an adhesion

contract, resolving ambiguities in favor of the insured. *See Dahms*, 2018 ND 263, ¶ 8.[1] The policy at issue does not define "similar insurance." Thus, we apply the ordinary meaning of "similar," which means "having characteristics in common: strictly comparable" and "alike in substance or essentials." *Merriam-Webster's Collegiate Dictionary* 1161 (11th ed. 2005); *see also American Heritage Dictionary* 1141 (2d Coll. ed. 1985) (defining "similar" as "[r]elated in appearance or nature; alike though not identical"). We conclude the language "similar insurance" in the Farm Family policy means the other insurance obtained by the insureds is similar "in type and in amount."

[¶19] Farm Family asserts *Ohio Casualty Insurance Company v. Gentile*, 102 F. App'x 737 (2d Cir. 2004), and *Providence Washington Insurance Company v. Advance Auto Rental, Inc.*, 1994 WL 401325, *3 (Sup. Ct. Conn. Jul. 15, 1994), are "directly on point" and demand a different result. However, neither *Ohio Casualty* nor *Providence Washington* addressed insurance provisions requiring "similar insurance." The termination provision in *Ohio Casualty* terminated the policy if the insured purchased "any other insurance policy" with respect to the automobile. 102 F. App'x at 738 n.1. The policy in *Providence Washington* similarly terminated the policy "on the effective date of *any other insurance policy* you purchase with respect to any automobile designated in both policies." 1994 WL 401325, at *3 (emphasis added). Thus, neither case addressed policies terminating coverage based on the purchase of "similar insurance." The phrase "similar insurance" is substantively different and significantly more restrictive than the phrase "any other insurance policy."

[¶20] Farm Family cites one case involving an automatic termination provision based on "similar insurance." *Stith v. Milwaukee Guardian Ins., Inc.*, 541 N.E.2d 1071, 1072 (Ohio Ct. App. 1988) ("If other insurance is obtained on

---

[1] We note courts in both Montana and Vermont apply similar rules to construe insurance policies. *See Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co.*, 403 P.3d 664, 668 (Mont. 2017) (quoting *Mecca v. Farmers Ins, Exch.*, 122 P.3d 1190, 1191 (Mont. 2005)) ("'Courts give the terms and words used in an insurance contract their usual meaning and construe them using common sense. Any ambiguity in an insurance policy must be construed in favor of the insured and in favor of extending coverage.'"); *Progressive N. Ins. Co. v. Muller*, 249 A.3d 24, 27 (Vt. 2020) ("Disputed terms must be accorded 'their plain, ordinary, and popular meaning.' . . . [A]mbiguity is construed against the insurer.").

your insured car, any *similar insurance* afforded under this policy for that car will cease on the effective date of the other insurance." (emphasis added)). However, in that case the court did not interpret the "similar insurance" language. Rather, it addressed the interplay between the "automatic termination" clause and the "other insurance" clause in the policy, concluding "in situations where the 'automatic termination' clause does apply, the 'other insurance' clause is simply inoperative." *Id.*

[¶21] The remaining issue is whether the Mountain West policy is "similar insurance" in type and in amount to the Farm Family policy. Under the undisputed facts of this case, this Court concludes, as a matter of law, the Farm Family policy and the Mountain West policy do not provide "similar insurance," *i.e.*, insurance that is "strictly comparable" or "alike in substance or essentials." An essential part of automobile liability insurance is the amount of coverage. A policy providing bodily injury liability coverage limits of $250,000 per person and $500,000 per accident and a policy providing bodily injury liability coverage limits of $100,000 per person and $300,000 per accident are not strictly comparable or substantively alike. We do not need to and do not decide today how much difference there must be in liability coverage for two policies to constitute similar insurance. We also do not need to and do not decide today how other differing aspects of insurance policies, such as deductibles and premiums, impact the consideration of whether two policies are similar. We simply hold, as a matter of law, that a policy providing bodily injury liability coverage limits of $250,000 per person and $500,000 per accident and a policy providing bodily injury liability coverage limits of $100,000 per person and $300,000 per accident are not similar insurance as used undefined in Farm Family's policy.

[¶22] On the undisputed facts, the automobile policy Farm Family issued to its insureds had not "ceased" and was in effect at the time of the April 2019 motor vehicle accident because the policy language required "similar insurance" for the policy to "cease on the effective date of the other insurance." The other policy issued to the insureds by Mountain West had different policy limits and, therefore, was not "similar insurance" under the automatic termination clause at issue.

8

[¶23] In its order, the district court addressed choice-of-law, the Farm Family policy's "out-of-state" insurance provision, and N.D.C.C. § 26.1-40-09. Because our decision is based on the plain language of the Farm Family policy's "cancellation or nonrenewal" provision's use of the phrase "similar insurance," we find it unnecessary to address the district court's analysis regarding choice-of-law, the Farm Family policy's "out-of-state" insurance provision, and N.D.C.C. § 26.1-40-09. Rather, we affirm the judgment because "[a] correct result will not be set aside merely because the district court relied on a different reason for its decision." *PHI Fin. Servs., Inc. v. Johnston Law Office, P.C.*, 2020 ND 22, ¶ 34, 937 N.W.2d 885 (quoting *City of Gwinner v. Vincent*, 2017 ND 82, ¶ 12, 892 N.W.2d 598).

[¶24] Based on the plain language of the "cancellation or nonrenewal" provision, we conclude the Farm Family policy was still in effect at the time of the accident. The provision required the other insurance obtained be "similar insurance" afforded under the policy. We conclude as a matter of law "similar insurance" as used in the provision means similar "in type and in amount." The two policies did not provide "similar insurance" in that the reduction of liability limits from $250,000/$500,000 (Farm Family policy) to $100,000/$300,000 (Mountain West policy) is not "similar insurance" so as to effect cessation under the provision.

IV

[¶25] We have considered the parties' remaining arguments and deem them either without merit or unnecessary to our decision. The judgment is affirmed.

[¶26] Jon J. Jensen, C.J.
  Daniel J. Crothers
  Lisa Fair McEvers
  Douglas A. Bahr

**Tufte, Justice, dissenting.**

[¶27] I respectfully dissent.

9

[¶28] I agree with the majority that the dispositive issue here is the meaning of the term "similar insurance" in the Farm Family policy's cancellation provision. The provision at issue reads: "If other insurance is obtained by you on your insured car, similar insurance afforded under this policy for that car will cease on the effective date of the other insurance."

[¶29] The majority determines the plain meaning of "similar insurance" requires similarity in "type and amount." In *United Fire & Cas. Co. v. Victoria*, which the majority found instructive, the Iowa Supreme Court speculated that "[i]t might well be the understanding of an insurance professional that these policies are similar. However, to an average policy buyer, a policy with substantially lower limits would not likely be viewed as 'similar.'" 576 N.W.2d 118, 120 (Iowa 1998). I agree to the extent that an "average policy buyer" would consider two policies to be less "similar" as a reduction in coverage limits becomes larger. For example, if the first policy provides coverage limits ten times higher than the second policy, the plain and ordinary meaning of "similar insurance" may compel the conclusion that the two policies are not similar, even if the other terms are identical. If the first policy provides coverage limits three times the limits in the second policy, the question is closer and one might want to know whether an average policy buyer would consider the second policy to be a reasonable substitute for the first. But this contrived example is too simple because it ignores the inescapable fact that differences in coverage are associated with differences in premiums. An average policy buyer would not pay the same premium for a policy providing one-third the coverage limits. In life, and in minimally functioning markets, there are always tradeoffs. Above the legal minimums required by state law, average policy buyers will be faced with tradeoffs in which higher coverage limits will require higher premiums, and higher deductibles will require lower premiums. To know whether two policies are "similar insurance" would require some assessment about whether an average policy buyer would view them as reasonable substitutes, or perhaps whether an insurance agent would quote them to a prospective buyer as plausible alternatives. *See Emps. Mut. Cas. Co. v. Martin*, 671 A.2d 798, 801 (R.I. 1996).

[¶30] I believe the majority opinion and several of the authorities it relies on err by viewing "similar insurance" as a binary choice in which the second policy either is similar or is not similar. Most significantly, these decisions appear to stand for the proposition that a reduction in coverage limits between the first policy and the second policy renders the second policy not "similar insurance" with respect to the first. Majority, at ¶ 24; *Victoria*, 576 N.W.2d at 120 (rejecting argument that "insured can obtain lower limits of liability under a second policy and still have 'similar' coverage"); *S.C. Farm Bureau Mut. Ins. Co. v. Courtney*, 342 S.C. 271, 273, 536 S.E.2d 689, 690 (Ct. App. 2000) (policy limits reduced from 100/300 to 15/30), *aff'd* on other grounds, 349 S.C. 366, 563 S.E.2d 648 (2002). These decisions strongly suggest that if the second policy had higher limits, it would be "similar insurance" and trigger the cancellation of the first policy. In my view, if the second policy is similar to the first, then the first has to be similar to the second. Stated another way, if a $300,000 limit policy is "similar insurance" with respect to a $100,000 limit policy, then that same $100,000 limit policy must also be "similar insurance" with respect to the $300,000 limit policy. Similarity must be a two-way street. Part of the problem here is that the plain meaning of "similar" signals a relative comparison where two things are more similar to each other than they are to other things. For example, one might say policy A is more similar to policy B than it is to policy C. Two policies covering the same risks and the same vehicles will be similar in some ways and different in others. This vague term does not permit us or a policy holder to reliably determine how alike two policies must be in limits, premiums, deductibles, or other factors to flip the switch and cancel an earlier-acquired policy. A person obtaining insurance coverage naturally trades off the cost of premiums against the coverage type and amount and the deductible. Above the minimum coverage required by law, insurance agents quote and insurance buyers consider a range of coverage types and amounts.

[¶31] I would consider the plain meaning of "similar insurance" from the perspectives of both buyers and sellers of insurance policies. Although "similar" implies that the two insurance policies share some common characteristics, it does not provide a clear standard or level of similarity required for the clause to take effect, nor does it specify what characteristics are essential to the determination. In the market for insurance policies, buyers consider both cost

11

and benefits when comparison shopping. To fairly consider the plain meaning of "similar insurance" to buyers and sellers in this market, we must consider at least coverage limits, deductibles, and monthly premiums. For years, we were reminded in advertisements that fifteen minutes could save you fifteen percent or more on auto insurance. It would seem that insurance policies are advertised more frequently on price than on coverage limits. But even if we consider the ordinary meaning of "similar insurance" to require consideration of all significant policy terms, the word "similar" is inherently vague in this and many other contexts. *Auto Owners Ins. Co. v. Benjamin*, 415 S.C. 137, 148, 781 S.E.2d 137, 143 (Ct. App. 2015) (noting several jurisdictions had concluded the term "similar" in insurance contracts is "inherently vague," "elastic," "ambiguous," "broad," and "insufficiently precise").

[¶32] This policy states: "If other insurance is obtained by you on your insured car, similar insurance afforded under this policy for that car will cease on the effective date of the other insurance." It is undisputed that the Hamiltons obtained "other insurance" on their "insured car." The threshold comparison required by this cancellation provision does not ask whether the second policy with lower limits is "similar insurance," as the majority and many of the cited authorities read it. Rather, in terms of the policy, if "you" obtain "other insurance" on "your insured car," the question is what, if any, "similar insurance" is provided by the first policy as compared to the second. If the first policy provides similar insurance, that coverage ceases on the effective date of the other insurance. Even applying the one-way street interpretation of "similar insurance," the street runs the other way. The majority should be asking whether the higher-limit first Farm Family policy is similar to the Mountain West policy, and not whether the Mountain West policy is similar to the Farm Family policy.

[¶33] Rather than attempting to supply precision to the inherently vague term "similar" by deciding whether the reduced policy limit here is substantial enough to make the two policies not "similar," I would apply the sensible rule adopted by the Tennessee Court of Appeals. Acknowledging that "similar insurance" may mean either "similar in kind" or "similar in kind and amount," the court strictly construed the policy in favor of the insured and adopted the

12

meaning that would preserve coverage. *Franklin v. Kimberly*, 1997 WL 379173, at \*3 (Tenn. Ct. App. July 9, 1997), *cited in Courtney*, 342 S.C. at 276 n.3. In doing so, the court held "that the insurance coverage in the two policies is similar only to the extent of the amount of coverage in the second policy." *Id.* There, as here, the initial policy had a relevant limit of $250,000, and the second policy had a limit of $100,000. The result of the court's decision was that the second policy terminated the coverage of the first policy only to the extent of the second policy's limit.

[¶34] Jerod E. Tufte