# IN THE COURT OF APPEALS OF IOWA

No. 23-1668
Filed October 2, 2024

**MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,**
    Plaintiff-Appellee,

**vs.**

**RASMUSSEN, NELSON & WONIO, PLC, and JOSEPH T. RASMUSSEN,**
    Defendants-Appellants.

_____

Appeal from the Iowa District Court for Audubon County, Christopher C. Polking, Judge.

A law firm and attorney appeal a declaratory judgment in their insurer's favor. **AFFIRMED.**

Ryland Deinert and Julia Adams of Klass Law Firm, LLP, Sioux City, for appellants.

Richard J. Thomas of Burke & Thomas, PLLP, Arden Hills, Minnesota, for appellees.

Heard by Schumacher, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

The law firm of Rasmussen, Nelson & Wonio, PLC (the Firm) and attorney Joseph Rasmussen appeal a declaratory judgment finding their malpractice insurer, Minnesota Lawyers Mutual Insurance Company (MLM) had no obligation to further defend or indemnify them in a suit brought by former clients. Finding a verbal disclaimer of suit does not affect the Firm's duty under these specific policy terms to report a potential claim to their insurer, we affirm the district court's construction and interpretation of the insurance contract and affirm the grant of summary judgment.

## I.      Background Facts and Proceedings

In 2019, Tom and Brenda Muhr purchased loans from a bank covering a secured property for $2.7 million. At the time of purchase, the property was secured by a 2015 financing statement perfecting the lender's first-priority interest in the property. Rasmussen and the Firm represented the Muhrs in the purchase and amended the financing statement to identify the Muhrs as the creditors. No continuation of financing statement, *see* Iowa Code section 554.9515 (2020), was filed, and the financing statement lapsed in 2020 at the end of the five-year effective period. The Muhrs allege Rasmussen and the Firm still represented them as to the purchase, failed to advise them of the need to renew the financing statement, and failed to timely renew the financing statement, resulting in the loss of their status as first-priority secured creditors for the property.

The Muhrs brought the failure to file the financing statement to the attention of Rasmussen and the Firm in February or March 2021. According to Rasmussen and the Firm, around that time Tom Muhr "told [them] he would not make a claim

against them." There is no indication that assurance was converted to a writing. The property owners defaulted on their repayment obligations, and the Muhrs hired new counsel to represent them regarding the loan. The property was foreclosed on for $1.7 million—significantly less than was owed on the loan held by the Muhrs. Because they had lost first-priority status, the Muhrs were ultimately entitled to only $150,000—less than 10% of the net proceeds and a tiny fraction of the purchase price of the loan.

On August 4 and 5, the Firm submitted an application to renew its professional liability insurance through MLM, signed by Rasmussen. The Firm made no mention of the Muhrs' filing statement issue on its application.

In April 2022, the Muhrs' new counsel emailed Rasmussen, noting "some lingering issues are starting to fall into place," and advising Rasmussen it was time "to begin talks with your professional liability insurer." In June, MLM advised Rasmussen and the Firm it concluded the policy did not provide coverage for the Muhrs' claim.

In September, the Muhrs filed a legal malpractice claim against the Firm and Rasmussen. On October 31, MLM filed a petition for declaratory judgment against the Firm, Rasmussen, and the Muhrs, asserting it had no duty to defend or indemnify the Firm or Rasmussen on the Muhrs' suit because the Firm and Rasmussen did not notify them of the potential for a claim at the appropriate time. MLM later moved for summary judgment. The Firm and Rasmussen resisted, suggesting the proper date for notice to MLM was when the Muhrs' new attorney informed them of potential suit. The Muhrs did not file a pleading or other documents.

In its ruling on the summary judgment motion, the district court discounted the Firm and Rasmussen's reliance on Muhr's initial assurance he would not sue: "Any experienced lawyer knows that an initial statement from someone aggrieved that they will not pursue remedies cannot be fully relied upon, there is a potential for liability in an unresolved matter so long as there are facts that *could* support a future claim." The court looked to the policy language and the plain meaning of its terms to determine there was no ambiguity in the policy or application, and it granted MLM summary judgment.

The Firm and Rasmussen appeal.

## II.     Relevant Application and Policy Language

The application is incorporated into the insurance policy, with the insured's statements in the application being representations of the insureds. On the policy renewal application, Rasmussen checked "No" on behalf of the Firm to the following questions:

> 6. In the **last 12 months**:
>     a. have any malpractice CLAIMS been made against any member of the firm?
>     b. has any firm member become aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm?
>     c. has any firm member received an ethics complaint or been disciplined for an ethics violation?
>     d. If yes to **any** of the above, have all items been reported to Minnesota Lawyers Mutual?

Rasmussen also agreed to the following relevant coverage statements and warranties in the application:

> • The applicant hereby certifies all known claims, lawsuits incidents, and disciplinary investigations have been reported to the present and previous insurance carriers and the applicant has no

knowledge of any threatened litigation or existing fact or situation which could result in a claim being filed against the applicant.

• Failure by the applicant to report any known claim, lawsuit, incident, or disciplinary investigation or any known facts which may result in a claim, to current or previous insurers may result in the declination of coverage for these matters by current or previous insurers.

. . . .

• After having made inquiry of all firm attorneys, [the applicant] is not aware of any claims or circumstances that could result in claims or disciplinary proceedings that have not been reported to Minnesota Lawyers Mutual.

• All known claims, lawsuits, incidents, and/or disciplinary proceedings have been reported to the present or previous insurance carriers, and the undersigned, after having made inquiry of all firm attorneys, has no knowledge of any threatened litigation or existing fact or situation which could result in a claim or disciplinary action being filed against the firm.

The coverage provision of the policy limits claims that may be made:

WE will pay, subject to OUR limit of liability, all DAMAGES the INSURED may be legally obligated to pay and CLAIM EXPENSES, due to any CLAIM, provided that:

(1) the CLAIM arises out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible;

(2) the act, error, or omission occurred on or after the PRIOR ACTS RETROACTIVE DATE and prior to the expiration date of the POLICY PERIOD;

(3) the CLAIM results from the rendering of or failure to render PROFESSIONAL SERVICES;

(4) the CLAIM is deemed made during the POLICY PERIOD; and

(5) the CLAIM is reported to US during the POLICY PERIOD or within 60 days after the end of the POLICY PERIOD.

A CLAIM is deemed made when:

(1) a demand is communicated to an INSURED for DAMAGES resulting from the rendering of or failure to render PROFESSIONAL SERVICES; or

(2) an INSURED first becomes aware of any actual or alleged act, error or omission by any INSURED which could support or lead to a CLAIM.

"Claim" is defined as:

    (1)    a demand communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;

    (2)    a lawsuit served upon the INSURED seeking such DAMAGES;

    (3)    any notice or threat, whether written or oral, that any person, business entity or organization intends to hold an INSURED liable for such DAMAGES; or

    (4)    any act, error or omission by any INSURED which could support or lead to a demand for such DAMAGES.

"Damages" are "monetary judgments or monetary settlements." Claim expenses include MLM-retained attorney fees and expenses in the investigation and defense of claims.

The "policy period" is "the period from the effective date of this policy to the expiration date or earlier termination date of this policy." The policy period at issue in this case ran from August 26, 2021 to August 26, 2022.

### III.    Standard of Review

"We use the errors at law standard when our decision rests upon the interpretation of an insurance policy." *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013). And we review a "grant of summary judgment for correction of errors at law." *Id.* "When no extrinsic evidence is offered on the meaning of language in a policy, interpretation and construction of an insurance policy are questions of law for the court." *Farm Bureau Life Ins. v. Holmes Murphy & Assocs., Inc.*, 831 N.W.2d 129, 133 (Iowa 2013). "Contract interpretation involves ascertaining the meaning of contractual words; construction refers to deciding their legal effect." *Payton v. DiGiacomo*, 874 N.W.2d 673, 677 (Iowa Ct. App. 2015) (cleaned up).

## IV.    Discussion

The supreme court has provided guidance on how we are to construe insurance policies:

> The controlling consideration in construction of insurance policies is the intent of the parties.  We determine intent by what the policy itself says except in cases of ambiguity.  Ambiguity exists when the language of a policy is susceptible to more than one reasonable interpretation.  We read the insurance contract in its entirety, rather than reading clauses in isolation, to determine whether a policy provision is subject to two equally proper interpretations.  We refrain from straining the meaning of the words and phrases of the policy to avoid imposing liability that was not intended and coverage that was not purchased.
> . . . If a word is susceptible to two interpretations, typically we adopt an interpretation favoring the insured.  Mere disagreement, however, as to the meaning of the terms, does not establish ambiguity.  Instead we examine whether the policy language, viewed objectively, is fairly susceptible to two interpretations.  Ultimately, if there is no ambiguity, the court will not rewrite the policy for the parties.

*Farm Bureau*, 831 N.W.2d at 133–34 (internal citations omitted).

The Firm and Rasmussen assert the court erred in finding when the claim was deemed made, further arguing the court erred in not construing the policy in a light most favorable to the Firm and Rasmussen; the court interpreted the policy as an expert, not an ordinary person; and the policy was ambiguous.  The Firm and Rasmussen also argue the district court erred in not permitting the Muhrs' counsel to make an argument at the summary judgment hearing.[1]

---

[1] MLM's brief and the Firm and Rasmussen's reply brief raise a question of coverage over failure to foreclose judgment liens.  The district court did not directly address this on its own, but its ruling MLM "has no obligation to further defend or indemnify the Firm or Rasmussen in connection with the claim of Tom and Brenda Muhr" seems to encompass all claims brought by the Muhrs against the Firm and Rasmussen.  If the parties thought the issue required a separate analysis from the other claims, it was incumbent upon them to raise it in a motion to enlarge or amend the summary judgment ruling to address (or preserve) the issue, and

**A. When was the claim made?** The Firm and Rasmussen question whether the early 2021 communication constitutes a claim under the policy and when the claim was "deemed made." They rely on application language that the Firm must be "aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm" and point to the statement by Tom Muhr in 2021 "that he would not assert a malpractice claim and would not sue the Firm or Rasmussen." The Firm and Rasmussen urge that because of Muhr's assurance, there was no claim for them to have "reasonably" known about. Instead, they argue the appropriate date for the claim to be deemed made was April 6, 2022—when the Muhrs' new attorney emailed Rasmussen about "some lingering issues" and said "it makes sense to begin talks with your professional liability insurer."

MLM asserts Muhr's assurance does not affect the Firm and Rasmussen's knowledge of the error or omission, and therefore the appropriate claim date is February or March 2021 when Muhr brought the problem to Rasmussen and the Firm's attention.

The district court's task—now ours—is to construe the legal effect of the application and policy. "We read the policy as a whole," evaluate clauses by context and applicability, and "consider all declarations, riders, or endorsements attached." *Boelman*, 826 N.W.2d at 501–02. After examining the policy and the

---

neither did so. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal."); Iowa R. Civ. P. 1.904(2) (providing a mechanism for such a motion).

application, we note in particular the following language in the insurance policy (bolding changed for emphasis), including answers by Rasmussen and the Firm:

- In the last 12 months . . . has any firm member become aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm? [No.]

- The applicant hereby certifies all known claims, lawsuits incidents, and disciplinary investigations have been reported to the present and previous insurance carriers and the **applicant has no knowledge of any** threatened litigation or **existing fact or situation which could result in a claim** being filed against the applicant.

- All known claims, lawsuits, incidents, and/or disciplinary proceedings have been reported to the present or previous insurance carriers, and the undersigned, after having made inquiry of all firm attorneys, has **no knowledge of any** threatened litigation or **existing fact or situation which could result in a claim** or disciplinary action being filed against the firm.

- "CLAIM(S)" means . . . **any act, error or omission by any INSURED** which could support or lead to a demand for such DAMAGES.

- A CLAIM is deemed made when . . . an INSURED **first becomes aware of any actual or alleged act, error or omission** by any INSURED which could support or lead to a CLAIM.

The Firm and Rasmussen insist the first statement—which had a yes/no checkbox on the application—incorporates a reasonableness standard into the policy, and Muhr's disclaimer of intent to sue when informing the Firm of its error means they did not believe a claim could result.

We find the other clauses in the application and policy defeat the Firm and Rasmussen's reading when we consider the policy as a whole—particularly the representation at the end of the application, where they certified having "no knowledge of any . . . existing fact or situation which could result in" an "act, error or omission by any INSURED which could support or lead to a demand" for damages. And the policy makes clear that the claim is deemed made when the

insured "*first* becomes aware" of an error or omission which *could* support a claim. (Emphasis added). In context, we think the application's phrase "could reasonably result in a claim" means the known act, error, or omission is a legally reasonable basis for a claim, not whether the insured subjectively believes it *will* be a claim. In other words, the claim originates from the insured's knowledge of an error sufficient to sustain a suit, not their knowledge it *will* result in a filed lawsuit. The loss of first priority on a multimillion-dollar loan is the sort of error which reasonably could result in a claim, so the Firm and Rasmussen had a duty under the insurance contract to disclose the error when it was discovered—in February or March 2021. Muhr's purported assurance a suit would not be filed does not change the existence of the error or the Firm's contractual duty to inform MLM of the error when seeking continuing coverage.[2]

We affirm the district court's finding the claim was deemed made in early 2021. Because the claim was deemed made before the policy period of August 26, 2021, it does not fall within the policy coverage provision.

---

[2] The Firm and Rasmussen cite multiple federal cases with slightly different policy language—highlighting two Pennsylvania district court cases—but no Iowa cases to support their "reasonableness standard" interpretation. We don't find the unreported district court cases particularly persuasive in light of this policy's language and Iowa case law instructing us to interpret insurance policy language as a whole. So we do not engage in a case-by-case analysis of the unpublished, out-of-jurisdiction authorities. To the extent we find other authorities persuasive, a recent decision from the Eighth Circuit largely tracks our analysis here. *See ALPS Prop. & Cas. Ins. Co. v. Bredahl & Assocs., P.C.*, 24 F.4th 1185, 1192 (8th Cir. 2022) ("The Policy thus imposes no qualification based on the likelihood or merit of a claim; the Policy requires only facts that might lead to a demand for money. Bredahl's personal expectations have no bearing on whether a reasonable person would know the Elite suit might be the basis of the claim.").

**B. Did the court err in how it construed the policy provisions?** The Firm and Rasmussen next assert the district court did not construe the policy provisions in the light most favorable to them. They urge any doubt whether a claim is covered by a policy is to be resolved in the insured's favor, and the reasonableness standard in the policy favors them. But we only construe in favor of the insured when the policy is actually ambiguous. *See Farm Bureau*, 831 N.W.2d at 133–34 ("[I]f there is no ambiguity, the court will not rewrite the policy for the parties."); *Boelman*, 826 N.W.2d at 501–02 ("[E]xcept in cases of ambiguity, the intent of the parties must control, and the court determines the intent of the parties by looking at what the policy itself says."). The construction urged by the Firm and Rasmussen relies on their interpretation of when the claim is deemed made, a question we resolved in MLM's favor above. A vague assertion we should construe a policy in the light most favorable to the claimant does not cause us to reconsider our analysis.

**C. Did the court interpret the policy from the standpoint of the Firm and Rasmussen as experts?** The Firm and Rasmussen assert that, viewing the facts and policy as an ordinary person, the claim was not deemed made until April 2022. They take particular umbrage with the district court's dismissal of Muhr's initial disclaimer of suit as not something "[a]ny experienced lawyer" would rely on.

The Firm and Rasmussen are correct that we view ambiguous insurance contract language "from the viewpoint of an ordinary person, not a specialist or expert." *United Fire & Cas. Co. v. Victoria*, 576 N.W.2d 118, 120 (Iowa 1998) (citation omitted). But we do not consider the court's analysis to interpret the

language as a specialist or expert. The court utilized the provided policy definitions where offered, plain meanings where not defined, and a reading of the entire policy in making its decision. We do not think the court's passing reference to the Firm as "experienced lawyer[s]" changed its interpretation of the policy language.

**D. Is the MLM policy ambiguous?** In arguing ambiguity in the policy, the Firm and Rasmussen focus on interpreting the term "incident" as used (but not defined) in the application. The term is also not defined in the policy itself, or even used in the policy, so the Firm and Rasmussen turn to dictionary definitions to urge the term is "susceptible to two or more reasonable interpretations."

First, we look at the actual text and its context: "In the last 12 months . . . has any firm member become aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm?" The Firm and Rasmussen argue the court should have defined incident as "[a] discrete occurrence or happening; an event, esp. one that is unusual, important, or violent." *See Incident*, *Black's Law Dictionary* (12th ed. 2024). In using that definition, they leap to the conclusion that only the April 2022 comment about contacting their liability insurer could constitute such an incident. The district court defined the word in its ruling: "In context, the word incident clearly means any separate events or occurrences."

While we agree the term "incident" has some ambiguity in context, the ambiguity is if it refers to when the act/error/omission actually occurred—sometime between the transfer of the financing statement to the Muhrs' name and the expiration of the priority in 2020 without filing or advising the filing of a continuation statement—or when the insured party discovered the act/error/omission occurred

through Muhr's notice to the Firm. But this ambiguity is immaterial to the question presented in this case. We reject as redundant the Firm and Rasmussen's version where the application question effectively asks "In the last 12 months has any firm member become aware of any notice of claim against the firm which could reasonably result in a claim being made against the firm or a member of the firm?" Our interpretation of incident as the firm or attorney's act, error, or omission or notice thereof is more logical and consistent with the plain meaning of the application and policy. The district court did not err in its interpretation.

**E. Did the court err in not allowing the Muhrs' counsel to argue at the hearing?** The Firm and Rasmussen claim the district court erred by not allowing the Muhrs' attorney to make an argument about the Firm and Rasmussen's knowledge of the sizeable claim held by the Muhrs. They argue, "Nothing within the Iowa Rules of Civil Procedure makes submitting a written resistance a pre-requisite to oral argument." Assuming without deciding the Firm and Rasmussen can raise this claim, we briefly address the merits.

After MLM filed for summary judgment against the Firm, Rasmussen, and the Muhrs, the Muhrs did not file any response. At the summary judgment hearing, the Muhrs stated they had no position on the motion and counsel was only present "to answer any questions I can, but I didn't anticipate making an argument today." After counsel for MLM and the Firm made their arguments, the Muhrs asked to "jump in for a brief minute" "from a factual standpoint." The court specified the only facts it would hear are "those facts that are listed as disputed or undisputed in this record." Counsel started to make a comment about the clarity of the $1.7 million claim, but MLM objected to it as an unbriefed argument. The court disallowed

anything "off the cuff today that had no writing or briefing on it leading up to this," citing the Iowa Rules of Civil Procedure.

In the statement of undisputed facts filed and answered by the parties, both parties acknowledge the Muhrs' petition against the Firm and Rasmussen alleges that if the continuation statement had been filed, the Muhrs would have been entitled to the $1.7 million net proceeds of the property sale and that they only received $150,000 of the net proceeds. The Muhrs could have filed a response contesting or clarifying any of the statements regarding their claims or submitted an affidavit as to facts relating to them, but they chose not to. Nor did they file any supplementary motion or statement on appeal arguing their right to make a new factual statement. The court was entitled to rely on, as an undisputed fact, that the Muhrs made such an allegation in their petition.

Iowa Rule of Civil Procedure 1.981(3) directs the court to base its judgment on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" when considering the existence of an issue of material fact. When oral testimony is permitted in a summary judgment hearing, it is to "supplement[ ] or oppose[ ]" affidavits already submitted. Iowa R. Civ. P. 1.981(5). Any statement challenging the undisputed facts, without a supporting affidavit or other evidence already presented with the motions, should not have been admitted.

We also note that any error that may have resulted is harmless. The size of the claim that eventually resulted from the Firm's error does not affect whether the Firm knew of the error in not filing or advising the Muhrs on filing the

continuation statement in February or March 2021 or whether the Firm chose to not disclose the error to their insurer in August.

### V. Disposition

We hold the client's verbal assurance they would not bring suit had no bearing on Rasmussen and the Firm's duty to report to their insurer an act, error, omission, or fact situation that otherwise could result in a claim being filed against them. We affirm the district court's construction and interpretation of the application and policy at issue. And we conclude the court did not err in declining to allow Muhrs' counsel to expand the summary judgment record beyond the pleadings. We affirm the grant of summary judgment and declaratory judgment in MLM's favor on its obligation to defend or indemnify the Firm or Rasmussen in relation to the Muhrs' claims.

**AFFIRMED.**